[No. 38625. Department Two. March 16, 1967.]

THE CITY OF SEATTLE, *Respondent*, v. JAMES A. JACKSON, *Appellant.*[*]

*Alvin J. Ziontz* and *Michael H. Rosen,* for appellant.

*A. L. Newbould* and *Denny E. Anderson,* for respondent.

[*]Reported in 425 P.2d 385.

BARNETT, J.†—On the 29th of March, 1965, a criminal complaint was filed in the municipal court of the city of Seattle. This complaint charged the defendant James A. Jackson, a Negro, with willfully and unlawfully causing a loud and disturbing noise at 1726 24th Avenue South. The defendant was tried and found guilty as charged by Judge Charles Z. Smith. The defendant appealed to the Superior Court for King County. In the superior court he was tried de novo on November 8, 1965, and again found guilty, this time however, by a jury. After the jury returned its verdict the defendant moved in arrest of judgment for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The motions were denied.

At the threshhold of our disposition of this appeal is the question of subject matter jurisdiction of the Municipal Court of the City of Seattle in the proceedings against the defendant. This question was first raised in oral arguments on this appeal. The defendant contends that the complaint against him was signed by an unauthorized party, therefore, it was void and all the proceedings against him were void also.

A Seattle police officer, H. W. Johnson, had signed under oath the criminal complaint against the defendant. This complaint was filed in the municipal court. It is stated that H. W. Johnson was not otherwise involved in the circumstances of the case.

The resolution of the question raised involves the application and meaning of the Criminal Rules for Courts of Limited Jurisdiction promulgated by this court. J Crim. R 2.01, RCW vol. 0 states in part:

> All criminal proceedings, except traffic and public intoxication cases, shall be initiated by a complaint as described below. The complaint is a statement of the essential facts constituting the offense charged. It shall be in writing and shall set forth:
> (a) the name of the court;

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

(b) the title of the action and the name of the offense charged;

(c) the name of the party charged; and

(d) the offense charged, in the language of the statute, with such particulars as will enable the defendant to understand the character of the offense charged, with such particulars as to time, place, person and property as will enable the defendant to understand the character of the offense charged.

Unless a complaint is prepared and signed under oath by a prosecuting attorney or other officer authorized so to do, an oral complaint shall be made before a judge empowered to commit persons charged with offenses against the state, who shall examine on oath the complainant and any witnesses the judge may require, take their statements, and cause the statements and the complaint to be subscribed under oath by the persons making them.

. . . .

No complaint shall be held insufficient by reason of defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits.

█ The complaint filed in this case complies with the requirements of this rule except that it is signed by an unauthorized person. The defendant contends that since H. W. Johnson was not a party authorized to sign the complaint within the purview of J Crim. R 2.01, RCW vol. 0, the municipal court had no jurisdiction to proceed with this case, notwithstanding the fact that the defendant appeared in municipal court and entered a plea. We disagree. We hold the defect is not fatal to the validity of the proceedings against the defendant. The requirement of a signature of a person named in J Crim. R 2.01 is in the nature of a personal right of the accused. *Brown v. State,* 9 Okla. Crim. 382, 132 Pac. 359 (1913). In *Roberts v. State,* 72 Okla. Crim. 384, 388, 115 P.2d 270 (1941), a county prosecutor's stenographer signed an information charging a misdemeanor. The court adopted language from *Brown v. State, supra,* stating:

". . . where a defendant pleads to an information which is not signed by the county attorney, and without objection goes to trial thereon, he waives all right to

afterwards object to the information upon this ground, and cannot be heard upon appeal to complain that the information was not signed by the county attorney as directed by law."

As recognized in *State v. Hurd,* 5 Wn.2d 308, 105 P.2d 59 (1940), verifications, proper signatures and oaths are to insure good faith in the institution of the proceedings and to prevent vexations and unmeritorious complaints. These requirements can be waived. *State v. Hurd, supra; Hammond v. State,* 3 Wash. 171, 28 Pac. 334 (1891). It is stated in 42 C.J.S. *Indictments and Informations* § 305, "Where the accusation is by complaint, . . . an objection that the complaint was not sworn to by the prosecuting witness is waived by failure to object at the trial." Although the defendant had a right to challenge the irregularity or insufficiency of the complaint he failed to do so in a timely manner. By entering a plea and proceeding to trial without any objection to the sufficiency of the complaint the defendant waived his right. The defendant cannot raise such objections in this court for the first time.

The recent Washington case, *Town of Orting v. Rucshner,* 66 Wn.2d 732, 404 P.2d 983 (1965), is cited in support of the defendant's argument. In *Orting* this court was called upon to construe the Traffic Rules for Courts of Limited Jurisdiction where no complaint at all had been filed. We find that *Orting, supra,* does not control the present situation for the reason stated in *Seattle v. Reel,* 69 Wn.2d 227, 228, 418 P.2d 237 (1966), where we said:

In the *Orting* case there was no complaint of any kind whatsoever before the court. We held the trial court was, therefore, without jurisdiction, and remanded the case for dismissal. There is no question that there was a complaint in the instant case. The decision in *Orting, supra,* is therefore not apt.

*State v. Alberg,* 156 Wash. 397, 287 Pac. 13 (1930), is also cited by the defendant. That case does not control the present case. It was not held that a complaint without a verification conferred no jurisdiction, but this court merely remanded the case back to the superior court

allowing the defendants the opportunity to challenge the legality of the proceedings in that court. Furthermore, since *Alberg, supra,* was decided we have held that an absence of a verification does not void the formal charge and such defect can be waived. See *State v. Hurd, supra; State v. Taylor,* 196 Wash. 37, 81 P.2d 853 (1938).

It has not been shown that a substantial right of the defendant has been prejudiced by the defect in the complaint.

Now we turn our attention to the arguments made in the defendant's opening brief. The sole basis presented by the defendant for arguing that the denial of his motions made at the conclusion of his trial was erroneous is an affidavit of one of the jurors hereinafter set out:

RICHARD POFF, being first duly sworn on oath, deposes and says:

That I reside at 2117 6th Place, Renton, Washington. I was a member of the jury that sat on the above-entitled case, which was heard before the Honorable Lloyd Shorett on the 8th day of November, 1965. I am an investigator and collector for Sparkman & McLean, realtors, and it is possible that I have visited the Jackson home regarding the matter of default on their mortgage payments on occasions prior to my being a member of the jury in the above case.

I am of the opinion that James A. Jackson did not receive a fair deliberation on the verdict that was returned by the jury. There was little discussion of the evidence, nor did the discussions follow the framework of the Court's instructions; more specifically, reasonable doubt or presumption of innocence were not discussed. The jury, without exception, appeared to be of the opinion that the defendant was guilty. I also heard some discussion of the Watts incident in California during which the statement was made that we did not want a similar incident to happen in our city. In my opinion, the verdict was reached as a racial determination rather than on the evidence presented, and with bias. In other similar cases in which I was a member of a jury, evidence was discussed and a verdict reached after the jurors discussed the matter. This was not so in the Jackson case.

The defendant's contention, based upon this affidavit of Richard Poff, is that he was denied his constitutional right of trial by a fair and impartial jury. The main thrust of the defendant's argument is that the jury's verdict resulted from racial prejudice on the part of certain unidentified members of the jury. We agreed that "[t]he right to trial by jury includes the right to an unbiased and unprejudiced jury. A trial by a jury, one or more of whose members are biased or prejudiced, is not a constitutional trial. . . . Nor do . . . [those] matters . . . inhere in the verdict or impeach it . . . ." *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 265, 401 P.2d 982 (1965).

The information necessary to answer the defendant is in the record. In it we find that all of the jurors were asked by the court on voir dire examination whether or not there were any reasons which would disqualify them from being jurors. To this question no negative responses were made. Several jurors were specifically questioned about bias toward Negroes, but any feelings of bias were denied and these jurors were passed for cause. Upon a careful search of the record we fail to discover any mention of the Watts incident or other racial matters in the testimony. In the summation to the jury by the defendant's own counsel the jury was next presented with racial issues. The tenor of the defense counsel's statements about racial disturbances can be seen from his final argument to the jury:[1]

> Now, ladies and gentlemen of the jury, this is kind of a fantastic case. You know, if I read the facts of the case, I would say this must have to be Selma, Alabama or maybe down in Laurel, Mississippi, or something like that. I would never imagine such a thing could have happened here in the City of Seattle.
>
> . . . .
>
> They all say they didn't let the kids out to get help. If they had, there might have been a thousand or five thousand people in the street and it would have taken a year

---

[1]Appellant's counsel on appeal did not participate in the superior court proceedings.

to resolve it, right here in Seattle we would have another Watts. Just by this type of conduct. So maybe it was lucky the kids didn't get out and get help that night.

I have known Jackson for many years, and I know his father, the whole bunch, and all they do is work and pay bills. They never get them all paid. He is not a belligerent man. He is not going out and looking for trouble. He was wronged and he came into the court and tried to resolve it. He didn't go any place. He didn't tell everybody around the area. Then we would have had barricades up there and police officers couldn't get in unless they were accompanied by other people. We would have had another Wattsville—right here in Seattle. But he didn't do that. He came down and talked to me and I said, "We will go through the usual judicial proceedings."

It can be seen that the attention of the jurors was in general directed towards racial problems in the United States and specifically to the Watts riots by the defendant's own counsel.

Adverting to the affidavit of Poff, we note that the only allegation contained in it which could conceivably be regarded as factual in character, consists of one sentence in which he claims he overheard some discussion of the Watts incident. That sentence reads as follows: "I also heard some discussion of the Watts incident in California during which the statement was made that we did not want a similar incident to happen in our city." This statement in no way reveals any sort of racial prejudice or bias against Negroes in general, nor specifically against the defendant. Such a discussion and statement indicates no desire whatsoever to convict the defendant because of his race. Furthermore, there is absolutely no elucidation as to what specifically was said, who said it, when it was said, or in what context. The factual assertion in the affidavit is altogether too general upon which to predicate error. *State v. Knapp,* 194 Wash. 286, 77 P.2d 985 (1938). We are not dealing here with the case of a juror on his voir dire examination stating that he had no prejudice and after the trial it became evident that he was in truth and fact prejudiced. See *Alli-*

*son v. Department of Labor & Indus.,* 66 Wn.2d 263, 401 P.2d 982 (1965).

Of course the opinions that juror Poff expressed in the affidavit cannot be considered as raising issues to be determined by this court. Affidavits used to impeach juries must state facts not mere opinions. *State v. Knapp, supra.* We find the defendant had a fair trial.

The judgment is affirmed.

FINLEY, C. J., DONWORTH, ROSELLINI, and HAMILTON, JJ., concur.