[No. 2920-1. Division One. November 8, 1976.]

DAVID GEORGE ROWLEY, ET AL, *Appellants*, v. GROUP HEALTH COOPERATIVE OF PUGET SOUND, ET AL, *Respondents*.

*Abbey, Beckley & Platis* and *Kenneth D. Beckley*, for appellants.

*Williams, Lanza, Kastner & Gibbs, Henry E. Kastner,* and *Joel D. Cunningham,* for respondents.

SWANSON, J.—David George Rowley, the minor plaintiff, appeals from a defense verdict in a medical malpractice suit against Group Health Cooperative of Puget Sound. He claims the trial court erred in denying his motion to dis-

qualify all persons on the jury venire who were members of the defendant Group Health on the basis of implied bias and in refusing to grant a new trial on the grounds both of implied bias and actual bias. Rowley's assignments of error present only one question—whether the trial court correctly determined that the challenged jurors were not biased solely because of their membership in Group Health. We agree with the trial court's resolution of the question and affirm its decision.

The factual context giving rise to this appeal is not in substantial dispute: Rowley was admitted to Group Health facilities in August of 1964 after a food choking incident. Rowley was not, however, kept in the Group Health Hospital; rather, at the request of his parents, he was transferred to Cabrini Hospital and placed under the care of a Dr. McElmeel. While at the Cabrini facility, Dr. McElmeel performed two bronchoscopy[1] operations on Rowley. During the second operation, young Rowley went into cardiac arrest from which he is said to have suffered brain damage. Thereafter, Rowley, by and through his guardian ad litem, commenced an action alleging medical malpractice against Group Health Cooperative of Puget Sound.

During the jury selection process of the trial below, Rowley's counsel discovered that four prospective jurors were either members of Group Health or were beneficiaries of Group Health services under various employment contracts. On voir dire, all but one of the four jurors were questioned directly as to their relationship with Group Health and their capacity or ability to be objective and fair in their evaluation of the evidence. All jurors questioned responded with the statement that their affiliation with Group Health would not impair their objectivity.[2] At the

---

[1]Bronchoscopy is the inspection of the interior of the tracheobronchial tree by means of an electrically lighted endoscope. *Stedman's Medical Dictionary* 232 (21st ed. 1966).

[2]The four venire persons testified as follows:

1. Juror Hauth:

"Q (Mr. Drayton) . . . And, now, do you feel that as a member of Group Health that you could be fair and impartial involving a case

close of the voir dire examination, Rowley's counsel accepted the jury as constituted, including the four jurors now under question, even though one peremptory challenge was still remaining to him. After closing arguments, the jury returned a verdict in favor of Group Health. Rowley's subsequent motion for a new trial was denied, and this appeal followed.

It is a fundamental tenet of our judicial system that a jury trial includes the right to an unbiased and unprejudiced jury. In fact, the very essence of due process would be denied if one or more members of a jury panel were allowed to remain as jurors while harboring a bias or prejudice toward one of the parties. *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 265, 401 P.2d 982 (1965). *See also Irvin v. Dowd*, 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639 (1961); *State v. Parnell*, 77 Wn.2d 503, 463 P.2d 134 (1969); *Seattle v. Jackson*, 70 Wn.2d 733, 425 P.2d 385 (1967). Because an impartial jury is of paramount importance, our legislature has provided a statutory scheme[3]

in which the Group Health doctors are alleged to have committed negligent acts towards one of its members?

"A Yes, I do. . . ."

2. Juror Gillespie:

"Q (Mr. Kastner) Mr. Gillespie, with the U.S. Postal Service, do they have any group medical coverage?

"A Yes. We are with Group Health. . . .

"Q (Mr. Drayton) In other words, if you were a plaintiff, you wouldn't hesitate to have you as a juror by reason of your being a member of Group Health?

"A Right."

3. Juror Bradley was not asked any direct questions about her connection with Group Health.

4. Juror Mar:

"Q (Mr. Drayton) Now, being a member of Group Health Plan, do you think you would be concerned about the outcome of the case?

"A No."

[3]RCW 4.44.180 provides in relevant part,

"A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:

". . .

"(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation."

whereby a juror found to have an "interest" in the action may be removed for cause from the jury panel on the basis of implied bias.

The critical issue we must resolve is simply what kind of an "interest" in the action is sufficient to constitute an implied bias. Specifically, is any type of interest, as that term is used in the statute, sufficient to render a prospective juror biased?

Prior to the statutory enactment of RCW 4.44.180(4) our Supreme Court in an early case, *Rathbun v. Thurston County*, 8 Wash. 238, 35 P. 1102 (1894), held that a tax-payer called as a juror in an action to recover against a county in which he was a resident, was not subject to challenge on the ground that he had an interest in the result of the litigation. The rationale, as the court pointed out in *Mironski v. Snohomish County*, 115 Wash. 586, 587, 197 P. 781 (1921),

> rested on the principle that the interest of the tax-payer in the result of the action is so remote, indirect and slight that it may fairly be supposed to be incapable of affecting his judgment.

We are aware that our implied bias statute expressly excepts citizens of counties and members of municipal corporations from the charge of implied bias. *See PUD 1 v. Washington Water Power Co.*, 20 Wn.2d 384, 147 P.2d 923 (1944). We merely refer to the court's reasoning in *Rathbun* and *Mironski* to illustrate how courts before us have interpreted the term "interest." From these cases it can be seen that something more than a minute or remote interest is needed to disqualify a juror for bias. Rather, the interest must be of a more substantial character.

■ Indeed, in *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651 (1962), 379 P.2d 918 (1963), a standard was promulgated to be used in determining whether certain jury misconduct required a new trial.

> " 'The determinative rules, or principles of law are plain and well established. If, upon a consideration of the whole of the pertinent record, it is *reasonably doubtful* whether or not the improper conduct affected the amount

·of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of the appellate courts. . . . (Italics ours.)

*Gardner v. Malone, supra* at 846, quoting *Lyberg v. Holz*, 145 Wash. 316, 259 P. 1087 (1927). Thus, the existence of a mere possibility or remote possibility of prejudice, without more, is not enough to set aside the verdict. The governing standard must be whether the irregularity described establishes a reasonable doubt that the plaintiff received a fair trial. *Spratt v. Davidson*, 1 Wn. App. 523, 463 P.2d 179 (1969); *see Carlos v. Cain*, 4 Wn. App. 475, 481 P.2d 945 (1971). Other jurisdictions have reached similar conclusions.

In *Kendall v. Prudential Ins. Co. of America*, 327 S.W.2d 174 (Mo. 1959), the Missouri Supreme Court stated that it was not error for the trial court to deny challenges to four venire persons who said, on voir dire examination, they were policyholders of defendant insurance company. The mere fact that the prospective jurors were policyholders in and of itself did not necessarily affect their judgment in the case.

The Wisconsin Supreme Court in *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 79 N.W.2d 249 (1956), declined to set aside a trial court ruling refusing to excuse four jurors for cause simply because they held liability insurance policies with plaintiff's insurance company. The court could find no abuse of discretion by the trial judge in determining the qualification of the jurors even though, as it said,

it is a good rule for the trial judge to honor challenges for cause whenever he may reasonably suspect that circumstances outside the evidence may create bias or an appearance of bias on the part of the challenged juror.

*Kanzenbach v. S.C. Johnson & Son, Inc., supra* at 627. *See also Oglesby v. Conger*, 31 Colo. App. 504, 507 P.2d 883 (1972); *Barb v. Farmers Ins. Exch.*, 281 S.W.2d 297 (Mo. 1955).

Appellant placed great emphasis, before this court, on the decision in *Ozark Border Elec. Cooperative v. Stacy*, 348 S.W.2d 586 (Mo. App. 1961). The *Ozark* case, appellant contends, stands for the proposition that members of cooperatives are akin to shareholders in corporations and are, as a matter of law, incompetent to sit as jurors. While we agree that corporate shareholders would be subject to challenge for cause, *see* 50 C.J.S. *Juries* § 213 (1947); 47 Am. Jur. 2d *Jury* § 325 (1969), we do not find the *Ozark* case controlling in the present instance. The *Ozark* court knew exactly what type of interest each cooperative member shared. In addition, rural electric cooperatives in Missouri are regulated by statute; in fact, their entire corporate structure is statutorily determined. This is not the case with Group Health Cooperative. We cannot say that the trial judge knew anything about the jurors who were members of Group Health other than the fact that they were members. This is not to say, however, that counsel could not have inquired into the relationship any prospective juror may have had with Group Health. Indeed, considerable latitude must be allowed in examining a jury to enable counsel to properly exercise not only challenges for cause but also peremptory challenges.[4] It is significant that there was no inquiry into the type of relationship existing between Group Health and the four jurors. Such an inquiry

---

[4] Our legislature has enacted a method whereby counsel may have a challenge to a juror judicially determined. RCW 4.44.230 provides:

> The challenge may be excepted to by the adverse party for insufficiency, and if so, the court shall determine the sufficiency thereof, assuming the facts alleged therein to be true. The challenge may be denied by the adverse party, and if so, the court shall try the issue and determine the law and the facts.

RCW 4.44.240 provides:

> Upon the trial of a challenge, the rules of evidence applicable to testimony offered upon the trial of an ordinary issue of fact shall govern. The juror challenged, or any other person otherwise competent may be examined as a witness by either party. If a challenge be determined to be sufficient, or found to be true, as the case may be, it shall be allowed, and the juror to whom it was taken excluded; but if determined or found otherwise, it shall be disallowed.

would have, perhaps, revealed whether the members of Group Health possessed assessable or nonassessable policies; whether their relationships to Group Health were akin to that of a shareholder of a corporation; or whether their interests amounted to a substantial pecuniary involvement as required by *Rathbun* and *Mironski.*

After considering the pertinent record, we cannot say that it is reasonably doubtful whether or not membership in Group Health by four members of the jury affected appellant's right to a fair trial. Consequently, we cannot say that it was error to deny appellant's request to dismiss the jurors for cause. *Gardner v. Malone, supra.*

█ Appellant also contends that the trial court committed reversible error in denying his motion for a new trial based on actual bias. Appellant supports his contention by an affidavit of one of the jurors as well as an affidavit of his counsel. The affidavit of counsel was plainly hearsay in character and cannot be used to impeach the verdict of a jury. *Casey v. Williams*, 47 Wn.2d 255, 287 P.2d 343 (1955). On the other hand, the juror's affidavit, which was based on actual knowledge, depicted the atmosphere surrounding the jury's decision including the fact that the decision was allegedly rendered in 10 minutes and that none of the instructions was read. A juror, in an affidavit tending to impeach the verdict, may only testify to matters which do not inhere in the verdict itself. As this court has stated previously, a trial court may consider statements of fact set forth in the affidavit but may not consider a juror's statement of the effect such facts had upon the verdict. *State v. Forsyth*, 13 Wn. App. 133, 533 P.2d 847 (1975). In *Cox v. Charles Wright Academy, Inc.*, 70 Wn.2d 173, 179-80, 422 P.2d 515 (1967), the court, in discussing this distinction, said,

> [C]ourts may consider only such facts asserted in the affidavits of jurors which relate to the claimed misconduct of the jury and do not inhere in the verdict itself. The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon

380

the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore, inhere in the verdict itself, and averments concerning them are inadmissible to impeach the verdict.

The motion for new trial was properly denied. We find no error and affirm the judgment.

FARRIS and ANDERSEN, JJ., concur.