[No. 12980–5–I.   Division One.   April 1, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. DWIGHT
A. HALL, *Appellant.*

*Appelwick & Trickey* and *Michael J. Trickey,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Senior Appellate Attorney,* for respondent.

WEBSTER, J.—Dwight Allen Hall was found guilty of two counts of rape in the first degree and two counts of robbery in the first degree. Hall appeals his conviction on the grounds that the trial court erred in (1) admitting evidence of pretrial identifications which were based on photographic montages, (2) admitting evidence of prior uncharged sexual offenses, (3) refusing the defendant's instructions on eyewitness identification testimony, (4) permitting the jury to find by special verdict that he was armed with a deadly weapon, and (5) denying the defendant's motion for a new trial despite the court's finding of juror misconduct. Finding no prejudicial error, we affirm.

The defendant was charged with the rapes and robberies of two teenage girls. Victim One testified that she was walking along Empire Way in Seattle on February 17, 1982, when a man, whom she later identified as the defendant, approached her and asked her if she had any drugs. When she said no, he tried to drag her by the arm to some nearby

bushes. She freed herself, and asked someone to give her a ride. When she got out of the car, the defendant again approached her, grabbing her and dragging her behind an apartment building. He held a knife, which was "a little bit bigger" than a penknife, according to the victim. After forcing her to have sex with him, the defendant took her leather jacket and left.

Victim Two testified that she was walking home from Franklin High School in Seattle on February 18, 1982, when a man, whom she later identified as the defendant, asked her if she wanted to smoke a marijuana cigarette with him. She agreed, and they walked into an open garage and smoked. When she tried to leave, he produced a switchblade and forced her to have sex. The knife blade was "approximately four to five inches." He then forced her into a more secluded garage, where he forced her to have sex again. He left after taking some gold jewelry.

Witness A testified that she was walking home from Franklin High School in November of 1981, when a man, whom she later identified as the defendant, approached her and grabbed her breasts. About a week later, in the same neighborhood, the same man came up to her on the street and squeezed her buttocks. The man assaulted her a third time at a nearby intersection, this time grabbing her crotch. A short while later, he approached her in the hallway of Franklin High School. She ran into a classroom and told her friend, Witness B, and a teacher. The three of them observed the man for a few minutes before he walked away.

The defendant was found guilty of two counts of rape in the first degree and two counts of robbery in the first degree. The jury returned a special verdict that he was armed with a deadly weapon as to all counts.

The first issue before this court is whether the trial court erred in admitting evidence of pretrial identifications based on photographic montages.

Each witness and victim was shown a photo montage containing defendant Hall's photograph. All except Witness B immediately identified Hall as the assailant. Before trial,

the defendant moved to suppress evidence of the pretrial identifications. After hearing testimony, the court denied the defendant's motion.

Pretrial photographic identification evidence need only be suppressed if the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Hilliard,* 89 Wn.2d 430, 438, 573 P.2d 22 (1977) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968)). The Supreme Court has noted several factors which may make the identification procedure suggestive, but none of these factors is present here. *State v. Hilliard, supra* at 439. The defendant argues that he is the only one in the montage to be pictured in a jail uniform and that it is impossible to compare the height of the individuals photographed. However, the photograph shows only the top of his shirt, which is not apparent as a jail uniform except to those who are familiar with what prisoners wear. While it is impossible to compare the height of the individuals in the montage, this does not make the procedure "suggestive" of any one person. Moreover, since the defendant did not object below on the basis of either the height factor or the jail uniform, we need not consider these objections on appeal. RAP 2.5(a).

The second issue is whether the trial court erred in admitting evidence of the prior uncharged sexual offenses in order to show the identity of the defendant.

Denying the defendant's pretrial motion to exclude the testimony of Witnesses A and B, the court held that the probative value of the evidence outweighed its prejudicial effect and the similarities between the charged and uncharged offenses were relevant to the issue of the identity of the defendant.

Evidence of the defendant's prior sexual acts may be admitted under ER 404(b) to show identity if the evidence is logically relevant to the issue of identity, identity is a material issue before the jury, and the probative value of the evidence outweighs its potential for prejudice. *State v.*

*Coe,* 101 Wn.2d 772, 777, 684 P.2d 668 (1984). Considera-
tion of the potential for prejudice is especially important in
sex cases. *State v. Saltarelli,* 98 Wn.2d 358, 363, 655 P.2d
697 (1982).

We conclude that the testimony of Witnesses A and
B should have been excluded because it was irrelevant to
the issue of identity. A prior act may be admitted to show
identity "if it bears such a high degree of similarity as to
mark it as the handiwork of the accused." *State v. Coe,
supra* at 777 (quoting *United States v. Goodwin,* 492 F.2d
1141, 1154 (5th Cir. 1974)). The assaults against Witness A
were very different from the rapes and robberies of the two
victims. The defendant did not show a knife to Witness A,
he did not ask her about drugs, he did not drag her to a
secluded spot, and he did not rape or rob her. He did, how-
ever, do all these things to Victims One and Two. Because
the prior acts were so dissimilar to the charged acts, we find
the witnesses' testimony not to be sufficiently probative of
identity as to be admissible under ER 404(b).

Having found that it was error to admit Witness A's
testimony, this court should reverse only if, within reason-
able probabilities, the outcome of the trial would have been
different had the error not occurred. *State v. Jackson,* 102
Wn.2d 689, 695, 689 P.2d 76 (1984). Both Victim One and
Victim Two identified the defendant before trial and in
court as their assailant. In addition, Victim One identified
the defendant's hat. It is therefore not probable that the
outcome would have differed had the jury not heard the
testimony of Witnesses A and B. The trial court's error was
harmless.

The third issue is whether the trial court erred in refus-
ing Hall's instruction on identity.

The defendant's proposed instruction, cautioning the
jury on eyewitness identification testimony, was taken from
an instruction in *United States v. Telfaire,* 469 F.2d 552
(D.C. Cir. 1972). Although the Washington Supreme Court
has not ruled on whether such instructions are always
inappropriate, Washington courts have consistently re–

jected *Telfaire* instructions. *State v. Laureano*, 101 Wn.2d 745, 768, 682 P.2d 889 (1984); *State v. Ammlung*, 31 Wn. App. 696, 701, 644 P.2d 717 (1982); *State v. Edwards*, 23 Wn. App. 893, 897, 600 P.2d 566 (1979); *State v. Jordan*, 17 Wn. App. 542, 544, 564 P.2d 340 (1977). The instruction has been considered a comment on the credibility of the identification witnesses. *State v. Ammlung, supra.*

■ We find the court's rejection of the defendant's proposed instruction was not prejudicial. The court's general instructions on the "beyond a reasonable doubt" standard enabled the defendant to argue his theory of the case and to attack the credibility of eyewitnesses. *State v. Edwards, supra.*

The fourth issue is whether there was sufficient evidence for the special verdict finding that the defendant was armed with a deadly weapon.

■ Although the threat of a deadly weapon is sufficient for first degree rape, the jury must find the existence of a deadly weapon in fact for a special verdict that the defendant was armed with a deadly weapon. *State v. Hentz*, 99 Wn.2d 538, 543, 663 P.2d 476 (1983). Under the special verdict statute, a knife with a blade greater than 3 inches is a deadly weapon, while a knife with a blade shorter than 3 inches may be a deadly weapon depending on the circumstances of its use. *State v. Thompson*, 88 Wn.2d 546, 549, 564 P.2d 323 (1977); RCW 9.95.040. Victim One testified that the defendant's knife was "maybe a little bit bigger" than a penknife and that he held it up to her neck. Victim Two testified that the knife blade was "approximately four to five inches" and the defendant held it to her face and threatened her.

■ In reviewing the sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime charged beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). For purposes of this review, circumstantial evidence is to be considered as reliable as direct evidence.

*State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Although no knife was introduced into evidence, after viewing the testimony in the light most favorable to the State, we hold that the jury could have found the defendant used a deadly weapon against both victims, even if the blade was less than 3 inches long. "It is not denied that a knife having a blade 3 inches or less in length can be capable of producing death and is in fact likely to produce death if strategically used." *State v. Thompson, supra* at 549.

The final issue before this court is whether the trial court erred when it found juror misconduct but denied the defendant's motion for a new trial.

Six months after the trial, one of the jurors was found in contempt of court and fined $100 when it was discovered that he had spoken to his brother–in–law three times by telephone about the case during the trial. In the first conversation, the juror told his brother–in–law the nature of the charges, and that the defendant was black and the two victims were white. In the second conversation, the juror said that things "did not look good for the defendant," but the defendant had not yet given his side of the story. In the third conversation, which occurred after the verdict was given, the juror discussed the case in some detail.

The defendant moved for a new trial. The court found that there was no misconduct on the part of the juror that "gives rise to grounds sufficient for granting a new trial," that the juror did not receive any information not properly admitted into evidence, and that the defendant had not shown the juror had evaluated any evidence prior to the deliberation process.

Once juror misconduct has been found, and it is "reasonably doubtful" whether the misconduct affected the verdict, the trial court abuses its discretion if it does not grant a new trial. *Gardner v. Malone,* 60 Wn.2d 836, 846, 376 P.2d 651, 379 P.2d 918 (1962). However, every technical violation of RCW 4.44.300, which governs the procedure for jury deliberation, does not require a new trial. *State v.*

*Crowell,* 92 Wn.2d 143, 147, 594 P.2d 905 (1979). "Something more than a possibility of prejudice must be shown to warrant a new trial." *State v. Lemieux,* 75 Wn.2d 89, 91, 448 P.2d 943 (1968).

There is no evidence of more than a possibility of prejudice here. The juror's statement that the defendant is black does not by itself indicate racial prejudice. *See Seattle v. Jackson,* 70 Wn.2d 733, 739, 425 P.2d 385 (1967). His statement that things did not look good for the defendant, but that the defendant had not yet given his side of the story, does not indicate the juror did not afford the defendant the presumption of innocence throughout the trial. Although the juror's brother–in–law testified that he had the impression the juror had made up his mind before the trial was over, this impression goes to the juror's mental processes, a matter which inheres in the verdict and may not be considered by the court. *State v. Crowell, supra* at 146.

The record does not disclose more than a possibility of prejudice nor is it even reasonably doubtful that the juror's telephone conversations prejudiced the defendant. The trial court therefore did not abuse its discretion in denying the defendant a new trial.

The judgment and sentence is affirmed.

CORBETT, C.J., and SCHOLFIELD, J., concur.

Review denied by Supreme Court June 20, 1985.