FILED
COURT OF APPEALS
DIVISION II

2013 NOV 19 AM 10: 48

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42701-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RAVEN VICTORIA PIERCE, | |
| Appellant. | |

BJORGEN, J. — Raven Pierce appeals from her convictions for second degree theft and second degree identity theft. Pierce assigns error to the trial court's (1) admission of testimony concerning statements Pierce made to a police officer; (2) failure to enter the written findings and conclusions required by CrR 3.5 until after Pierce had appealed; (3) seating of persons on the jury who had experience with crimes similar to those charged against Pierce; and (4) imposition of a sentence in excess of the statutory maximum. The State concedes the last error. Because the trial court did not abuse its discretion in admitting the officer's testimony or seating any members of the venire, and because Pierce fails to demonstrate prejudice resulting from the failure to timely enter findings and conclusions, we affirm her convictions. Pierce's sentence exceeds the statutory maximum for a class C felony, therefore we remand for either amendment of the term of community custody or resentencing within the statutory maximum for a class C felony.

## FACTS

Michelle Walker, an acquaintance of Pierce's, reported the theft of Walker's food stamp and government assistance funds for November 2010, along with the electronic balance transfer (EBT) card used to access the funds. Walker discovered that someone had replaced her EBT

No. 42701-0-II

card with a deactivated EBT card previously issued to Pierce. After obtaining the transaction history from Walker's stolen card, Pierce County Sheriff's Deputy Dan Hacker viewed video surveillance images taken from a store where suspicious transactions involving Walker's funds had occurred. The images showed a woman matching Pierce's description using the automatic teller machine and making purchases in the store at the same time as the suspicious transactions.

Hacker contacted Pierce, advised her of her rights, and questioned her about the incident. After Pierce denied stealing the funds, Hacker arrested Pierce and transported her to jail. The State charged Pierce with one count of second degree identity theft, two counts of second degree theft, and one count of forgery, all class C felonies.

The trial court held a CrR 3.5 hearing, June 6 and 7, 2011, at which Hacker testified that Pierce initially denied having used Walker's EBT card at all, but later admitted to switching the cards and using Walker's funds. Pierce testified that she admitted to Hacker from the beginning that she had used Walker's EBT card, but claimed that she had used it with Walker's permission. Pierce also testified that Hacker had sought to elicit statements from her by threatening to also arrest Pierce's boyfriend and by promising to book her only on one charge of identity theft.

In an oral ruling, the trial court concluded that "there was probable cause for the arrest, that Miranda[1] rights were given, and [Pierce] understood them, and that her statements were made freely and voluntarily to the officer." Report of Proceedings (RP) at 40-41. The trial court did not, however, enter written findings and conclusions until after the filing of Pierce's opening brief with this court.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

No. 42701-0-II

The case was set for a jury trial. During voir dire, a number of venire members revealed that they, or persons close to them, had been victims of theft, forgery, or identity theft. Some of these venire members ultimately served on the jury.

The jury convicted Pierce of all the charges except forgery. The trial court sentenced Pierce to the maximum standard range sentence for each charge, to run concurrently, for a total of 57 months' incarceration and 12 months' community custody. Pierce timely appeals.

ANALYSIS

In her opening brief, Pierce alleges that (1) the trial court's failure to enter written findings and conclusions after the CrR 3.5 hearing constitutes reversible error, and (2) the sentence imposed exceeds the statutory maximum for a class C felony. In her pro se statement of additional grounds for review (SAG), RAP 10.10, Pierce argues that the State should not have used Hacker's testimony and that she did not receive a fair trial because of juror bias. Because the juror bias claim, if established, would dispose of the other claims, we turn to it first.

I. JUROR BIAS

In her SAG, Pierce argues that "the judge and attorneys" should not have allowed many of the jurors to serve because those jurors had personal experiences with the same or similar crimes. SAG at 1. Although the record contains a verbatim transcript of the voir dire proceedings, it does not reveal whether Pierce's counsel challenged any of the allegedly biased jurors for cause, or how the judge may have ruled on any such challenges. Whether her argument amounts to a claim of ineffective assistance of counsel or one of erroneous denial by the trial court of challenges for cause, however, Pierce cannot show any prejudice resulting from the inclusion of these jurors. Therefore, her claim cannot be sustained.

3

We review a trial court's denial of a challenge for cause for manifest abuse of discretion. *City of Cheney v. Grunewald*, 55 Wn. App. 807, 810, 780 P.2d 1332 (1989) (citing *State v. Gilcrist*, 91 Wn.2d 603, 590 P.2d 809 (1979)). Although we reviews claims of ineffective assistance de novo, in order to establish such a claim a defendant must show both deficient performance by defense counsel and prejudice resulting from the deficiency. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009); *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Failure to establish prejudice generally ends the inquiry regardless of any alleged deficiency. *State v. Fredrick*, 45 Wn. App. 916, 923, 729 P.2d 56 (1986). Establishing prejudice requires that the defendant show a reasonable possibility that the outcome of the proceeding would have differed absent counsel's allegedly deficient conduct. *Reichenbach*, 153 Wn.2d at 130.

The right to a jury trial includes the right to an unbiased jury. *Grunewald*, 55 Wn. App. at 810 (citing *Rowley v. Grp. Health Coop.*, 16 Wn. App. 373, 375, 556 P.2d 250 (1976)). A prospective juror must be excused for cause if the trial court determines the juror is actually or impliedly biased. RCW 4.44.170, .180, .190. Here, Pierce appears to allege actual bias, defined as

> the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging.

RCW 4.44.170(2). A person who merely holds preconceived ideas may nonetheless serve as a juror if that person can put aside those ideas and decide the case impartially. RCW 4.44.190; *State v. White*, 60 Wn.2d 551, 569, 374 P.2d 942 (1962). Personal experience with the type of

4

crime at issue in the case does not by itself establish actual bias. *Grunewald*, 55 Wn. App. at 810.

All of the venire members actually seated on the jury who said that they had had personal experiences with similar crimes indicated during voir dire that they could put aside their feelings regarding those experiences and perform their duty without bias. Thus, if defense counsel challenged them for cause, the trial court did not abuse its discretion in denying those challenges. If defense counsel did not challenge them, Pierce cannot show any prejudice resulted, because the record before us does not show that any member of the jury was actually biased. Further, given the strength of the State's evidence, Pierce cannot show any reasonable probability of a different outcome had defense counsel performed differently. Thus, Pierce's claim fails regardless of how one characterizes it.

## II. THE CRR 3.5 HEARING

Pierce also assigns error to the trial court's failure to enter written findings and conclusions following the CrR 3.5 hearing until after the filing of Pierce's opening brief with this court. The State acknowledges that the failure constitutes error, but argues that the error was harmless.

CrR 3.5 requires a trial court to hold a hearing on the admissibility of any statements of the accused that will be offered. This court reviews challenges to findings and conclusions entered after a CrR 3.5 hearing in two ways: whether substantial evidence in the record supports the findings and whether the conclusions follow from those findings. *State v. Broadaway*, 133 Wn.2d 118, 130-31, 942 P.2d 363 (1997). Unchallenged findings become verities on appeal. *Broadaway*, 133 Wn.2d at 131.

CrR 3.5(c) imposes a duty on the court to make a record:

> After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor.

Where a trial court delays entry of written findings and conclusions until after a defendant files her opening brief, this court must reverse only if the defendant can show prejudice resulting from the delay or that the findings and conclusions were "tailored to meet the issues presented" in the brief. *State v. Quincy*, 122 Wn. App. 395, 398, 95 P.3d 353 (2004).

Pierce does not allege that the trial court tailored its findings to address issues raised in this appeal. Indeed, the only prejudice Pierce alleges resulted from the delay consists of the fact that the findings and conclusions "fail to comply with CrR 3.5(c)."[2] Reply Br. of Appellant at 2. This proves too much. If any failure to comply with CrR 3.5(c) established prejudice, then this court's holding in *Quincy*, 122 Wn. App. at 398, that lack of compliance with CrR 3.5(c) requires reversal only on a showing of prejudice or tailoring, would have no meaning. The required showing of prejudice must consist of more than a lack of strict compliance with the rule. Because Pierce fails to show any resulting prejudice, her claim that delayed entry of the findings and conclusions requires reversal must fail.

---

[2] Pierce alleges that "the court did not make any findings pertaining to Deputy Hacker's disputed testimony" and argues that without such findings "this court cannot determine whether substantial evidence supports the trial court's findings . . . and whether the findings support the trial court's conclusion that the statements were admissible." Reply Br. of Appellant at 2. Since Pierce's contrary testimony alone cast doubt on Hacker's testimony and the court explicitly resolved the conflict in favor of the State, this argument does not persuade.

### III. Testimony of Deputy Hacker

In her SAG, Pierce argues that Deputy Hacker lied about having sought to coerce Pierce, that Hacker "was evasive and unbelievable," and that the State "[s]hould not have used his testimony." SAG at 1. In order to obtain appellate review of an issue raised in a SAG, a defendant must "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Whether Pierce's SAG properly raises the admissibility of Hacker's testimony under this standard is debatable. Regardless, the claim has no merit.

In considering whether substantial evidence supports findings of fact, we defer to the trial court regarding witness credibility and conflicting testimony, viewing the evidence in the light most favorable to the prevailing party: here, the State. *City of Walla Walla v. $401,333.44*, 164 Wn. App. 236, 256, 262 P.3d 1239 (2011). Substantial evidence in the record, in the form of Hacker's testimony, supported the trial court's findings that Pierce made the statements voluntarily and without coercion or inducement. These findings properly support the trial court's decision to admit the incriminating statements. CrR 3.5. Assuming the issue is properly before us, Pierce's challenge to the admissibility of Hacker's testimony fails.

### IV. Sentence in Excess of the Statutory Maximum

The State concedes that, in light of our Supreme Court's decision in *State v. Boyd*, 174 Wn.2d 470, 275 P.3d 321 (2012), the trial court erred in sentencing Pierce to a term of community custody that, together with the term of confinement, exceeds the statutory maximum. The State is correct in its concession.

The legislature has classified the crimes at issue here as class C felonies, RCW 9.35.020(3) and RCW 9A.56.040(2), with maximum penalties of five years' confinement and a

fine of $10,000. RCW 9A.20.021(1)(c). A court may not impose a term of community custody that, combined with the term of confinement, exceeds the maximum term of confinement allowed by RCW 9A.20.021. RCW 9.94A.505(5), .701(9).

The trial court sentenced Pierce to 57 months' confinement and 12 months' community custody on the identity theft charge, concurrent with lesser sentences on the other charges. This totals 69 months—9 months in excess of the statutory maximum. Although the judgment and sentence noted that the combined total number of months could not exceed the maximum, under *Boyd*, 174 Wn.2d at 472, such a notation no longer suffices. The proper remedy is to "remand to the trial court to either amend the community custody term or resentence" Pierce. *Boyd*, 174 Wn.2d at 473.

We affirm Pierce's convictions and remand to the trial court to either amend the term of community custody or resentence Pierce consistently within the statutory maximum for a class C felony.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, P.J.

PENOYAR, J.

8