[No. 39137. Department One. May 2, 1968.]

JOHN TARABOCHIA, *Respondent*, v. JOHNSON LINE, INCORPORATED, *Appellant*, GRACE LINE, INC., *Respondent*.*

*Bogle, Gates, Dobrin, Wakefield & Long* and *John P. Sullivan,* for appellant.

*Reported in 440 P.2d 187.

*Farris, Bangs & Horowitz, J. Hartly Newsum,* and *Donald J. Horowitz,* for respondent Tarabochia.

*Little, Gandy, Stephan, Palmer & Slemmons* and *Robert L. Palmer,* for respondent Grace Line, Inc.

ROSELLINI, J.—This is an appeal from an order granting a new trial. The respondent, Tarabochia, who was injured while working as a longshoreman unloading cargo from the hold of a ship belonging to the appellant, was denied recovery by the verdict of a jury which found that the vessel was seaworthy. Affidavits obtained from two jurors by the respondent showed that they had performed a test or experiment in the jury room and that the results were "considered" by the members of the jury in arriving at their verdict. The trial court held that this was misconduct, justifying a new trial.

At the same time, the court dismissed a third-party action of the appellant against the stevedore contractor for indemnification. Because we have decided that the verdict must be reinstated, there will be no occasion to discuss the error assigned to this action of the trial court and the respondent Tarabochia will be treated as the sole respondent.

The evidence was that the respondent slipped and fell into a hole between plastic bags of urea, a crystalline substance, which he was unloading. There was a conflict in the evidence as to whether a number of plastic bags had broken and spilled urea and whether this urea had become wet, causing a slippery condition and making the unloading hazardous. The respondent's shoes, a plastic bag like those in which the urea was stowed, and two samples of urea, were introduced in evidence, and were taken to the jury room without objection on the part of the respondent. Members of the jury mixed the urea with water, put it on the plastic bag, and "conducted an experiment" on the bag. The nature of the experiment was not revealed by the affidavits.

The respondent successfully contended in the trial court

and now contends here that this experiment was prejudicial to his cause and resulted in the adverse verdict.

As the appellant's counsel pointed out during argument in the trial court on this motion, the results of the experiment performed by the jury were not disclosed in the affidavits secured by the respondent. They are not shown in the record. All of the testimony on the question at the trial was that a mixture of water and urea on a plastic bag would be slippery. The respondent suggests that it is possible, or even probable, that the jury's test showed that this combination of substances would not produce a slippery condition. If we are to assume this to be the fact, we must also assume that all of the witnesses who testified on the subject were in error. This would mean that the witnesses on both sides testified out of ignorance or colluded to deceive the jury. We cannot assume such an improbability.

The trial court, however, was of the opinion that, under our holding in *Cole v. McGhie*, 59 Wn.2d 436, 447, 361 P.2d 938 (1962), the results of the experiment were immaterial. In deciding that a new trial was required, it quoted and relied upon this language from that case.[1] " ' " " 'We cannot determine with certainty, nor is it necessary that we should, that the acts complained of did influence the verdict. It is sufficient cause for reversal if they are likely to do so.' " ' "

In the case of *Cole v. McGhie, supra,* the court had conducted a jury view of the scene of an accident in which the plaintiff had fallen over a timber which was designed to serve as a brake to the front wheels of cars parked in the defendant's parking lot. The question at issue was whether the plaintiff should have seen the timber and avoided falling over it. An effort was made to simulate the lighting conditions on the night of the accident, and the members of the jury were instructed to walk between two parked cars,

---

[1] The language was quoted from *Eckel v. Breeze*, 221 Ore. 572, 352 P.2d 460 (1960), quoting from *In re Vanderbilt*, 127 App. Div. 408, 111 N.Y.S. 558 (1908), by way of *Schneider v. Moe*, 151 Ore. 353, 50 P.2d 577 (1935).

as the plaintiff had done, to ascertain whether they could see the timber.

We held that this procedure was more than a jury view and was in fact an experiment, whereby the jury obtained new evidence not introduced at the trial, and that the conducting of this experiment was prejudicial error.

We also held that the plaintiff had not waived the error by inviting or acquiescing in the experiment, but on the contrary had protested and argued against it.

■ While it is true that we approved the rule that it is not necessary to show that an experiment influenced the verdict, but only to show that it was likely to do so, we did not hold that the results of the experiment are immaterial when considering the question of whether it was likely to influence the verdict. On the contrary, we based the decision on the fact that none of the jurors failed to see the timber and all of them succeeded in stepping over it—simply because they were looking for it, and this was the factor that made the conditions of the experiment unlike those which existed when the accident occurred. The jurors knew the guard rail was there; the plaintiff did not.

Thus it was because the result of the experiment was bound to be that the jurors did see the guard rail and did step over it that we held that the experiment was likely to influence the verdict.

There is no such certainty in regard to the outcome of the test performed by the jury in this case, unless that certainty is that the results of the test conformed to the uncontradicted testimony introduced at the trial.

There is nothing to indicate that the jurors obtained new evidence which was not introduced at the trial. In the case of *State v. Burke,* 124 Wash. 632, 637, 215 Pac. 31 (1923), relied upon by the respondent in support of the order, the jurors used a magnifying glass to examine a hacksaw which had been introduced in evidence, and found on it fine particles of wood dust. The presence of these particles tended to connect the defendant with the crime, but there had been no testimony about them at the trial. This court

held that this amounted to the reception of new evidence and stated the applicable rule as follows (quoting from 16 R.C.L. 299):

"If the effect of such an experiment is to put the jury in possession of evidence which should have been but was not offered on the trial, it is not permissible, but if the experiment involves merely a more critical examination of an exhibit than had been made of it in the court, there is no ground of objection. . . ."

In *State v. Everson,* 166 Wash. 534, 7 P.2d 603, 80 A.L.R. 106 (1932), the jury used a magnifying glass to examine a walking stick which had been admitted in evidence. This court cited *State v. Burke, supra,* and held that, inasmuch as the examination did not reveal any new material facts not already in evidence, it was merely a more critical examination of the evidence and did not vitiate the verdict.

In a Texas case, *Ingram v. Texas,* 363 S.W.2d 284, 285 (Tex., 1962), the defendant had testified that snuff which he was using when he was arrested smelled like rum, and said that this was what caused the arresting officer to think that he had been drinking. A package of the same brand of snuff was introduced in evidence, and the jury was allowed to take it to the jury room. There the jury mixed it with water to determine its odor. A motion for a new trial was denied, and the denial was affirmed on appeal, the court saying:

In the cases where such practice has been held reversible error, it was shown that the jury, by their examination, discovered new evidence which influenced their verdict.

In the present case, there is no showing as to the results of the jury's examination and experimentation with the snuff. No juror testified on the motion for new trial as to what smell was revealed by the examination of the snuff. In the absence of a showing that some new fact, hurtful to appellant, was discovered by the examination and experiment, which influenced the jury in the case, such action by the jury would not require the granting of a new trial. Smith v. State, 90 Tex.Cr.R. 24, 232 S.W. 497, and also Smith v. State, 152 Tex.Cr.R. 399, 214 S.W.2d 471.

The rules, gleaned from a compilation of the cases on this subject, are summarized in an annotation in 95 A.L.R.2d 355 (1964). The following excerpts are pertinent:

It is a fundamental rule that jurors may not receive evidence out of court, and therefore, insofar as alleged tests or experiments carried out by the jury during deliberations have the effect of introducing new evidence out of the presence of the court and parties, such tests and experiments are improper and, if the new evidence in question has a substantial effect on the verdict, prejudicial.

Since the function of the jury is to examine and evaluate the proper evidence produced in the case, and the practice in many jurisdictions permits and encourages the introduction into the jury room of various objective items of evidence, if the acts complained of as tests or experiments amount merely to an examination and evaluation of such evidence, it would seem that courts would hold that no new evidence is received and no impropriety results. It would appear, therefore, a simple matter to reconcile the cases by classifying those where an improper test was found as involving the reception of new evidence, and those where the claim of error was rejected as involving merely an intensive examination of evidence properly before the jury. However, when the cases are classified according to their facts and results, it is apparent that there has been some confusion and difficulty in the application of the rules in question, the line between the production of new evidence and the examination of the proper evidence being hazy and difficult to draw.

Clearly, even if the acts of the jurors went beyond the bounds of a proper examination of the evidence submitted to them, such "error" is a ground for complaint only if it appears that prejudice resulted.

And it is also clear that the party alleging an improper test or experiment is not ordinarily entitled to complain if he co-operated in producing it or waived his ground of complaint in any of various manners. (Footnotes omitted.)

We need not consider the question whether, by permitting the exhibits to be taken to the jury room without

objection,[2] the respondent waived his right to complain if a test was performed. The order must be held improper because there was no showing of prejudice to the respondent, that is, no showing that new material facts were discovered which must have influenced the verdict. The trial court was aware that the results of the test had not been revealed, but mistakenly construed the case of *Cole v. McGhie,* 59 Wn.2d 436, 361 P.2d 938 (1962), as not requiring such a showing.

■ The rule that this court will not reverse an order granting a new trial unless an abuse of discretion is shown does not apply in a case such as this, where the order is predicated on a question of law, since no element of discretion is involved. *Lyster v. Metzger,* 68 Wn.2d 216, 412 P.2d 340 (1966).

The respondent seeks to sustain the order for a new trial on the ground that it was justified because of error in the giving of instruction No. 4, which reads:

A vessel need not be free from all possibility of mishap. A shipowner has, however, an absolute duty to provide a longshoreman employed on board the ship with a seaworthy vessel.

Unseaworthiness exists whenever the vessel itself, or its appliances, appurtenances, equipment, cargo or places of work are in such condition as not to permit a longshoreman to perform his tasks on board with reasonable safety.

The shipowner's duty continues during the entire time the longshoreman is aboard the vessel and cannot be delegated.

As we understand the argument of the respondent, it is that this instruction assumes that the work will be done in a prudent manner, and that, therefore, it implies that contributory negligence is a complete defense to a claim of unseaworthiness. He concedes that the rule is that the vessel must be reasonably safe, not that the owner is abso-

---

[2]It is not unlikely that the jury thought when it was given the plastic bag, the urea crystals and the shoes, that it was being invited to conduct just such a test as it undertook.

lutely liable for injury to a seaman or longshoreman, and he cites no authority for the proposition that a vessel is unseaworthy if it is safe for a workman doing his task in the ordinary manner, exercising reasonable care, but unsafe for one performing his task negligently.

We do not conceive this proposition to be the law. In *Barracliff v. Maritime Overseas Corp.*, 55 Wn.2d 695, 699, 349 P.2d 1080 (1960), this court approved the following definition:

> " 'Unseaworthiness' exists whenever the vessel itself or its appliances, appurtenances or places of work are not reasonably safe or adequate for the purposes for which they are intended or ordinarily used. . . ."

■ It cannot be said that it is ordinarily presumed that a workman aboard ship will perform his tasks negligently. Therefore it is not the duty of the vessel owner to provide a ship which is safe for the negligent workman as well as the workman who exercises ordinary care. It does not follow from this that the owner is immune from liability to the negligent longshoreman or seaman who is injured. Such liability exists, provided that the ship is unseaworthy because it is unsafe for a longshoreman or seaman performing his tasks in the ordinary manner.

Consequently, if the instruction suggests that the concept of seaworthiness assumes that work will be done in an ordinarily prudent manner aboard the ship, it was not in error. Furthermore, there was no opportunity for the jury to be misled as to the role played by contributory negligence in a case such as this. The court instructed the jury very carefully and clearly that any negligence on the part of the respondent would not deprive him of the right to recover, if the vessel was in fact unseaworthy, but should merely be taken into account in arriving at the amount of damages.

■ Instruction No. 4 correctly stated the law. It will not be presumed that a jury was misled by a correct instruction, or that it accorded the instruction a meaning different from its plain language. *Strandberg v. Northern Pac. Ry.*, 59 Wn.2d 259, 367 P.2d 137 (1961). The giving of

the instruction was not error constituting grounds for the granting of a new trial.

The order is reversed and the cause remanded with instructions to reinstate the verdict.

FINLEY, C. J., HALE and McGOVERN, JJ., and LANGENBACH, J. Pro Tem., concur.