[No. 6178-7-III.   Division Three.   August 15, 1985.]

MARION JACQUELINE BYERLY, *Individually and as Personal Representative,* ET AL, *Respondents,* v. ARTHUR J. MADSEN, ET AL, *Appellants.*

*Michael J. Hemovich, Carl Oreskovich,* and *Hemovich & Nappi,* for appellant Madsen.

*Frank Johnson, Patrick Connelly,* and *MacGillivray & Jones,* for appellant Sacred Heart Medical Center.

*Terence Whitten, Clark Richards,* and *Lukins & Annis,* for appellant Allen.

*Ronald Mullin* and *Mullin, Etter & Cronin, P.S.,* for respondents.

MCINTURFF, A.C.J.—Defendants, Drs. Arthur Madsen and Max Allen and Sacred Heart Medical Center appeal the superior court order vacating a jury verdict in their favor in a malpractice action and granting a new trial to the plaintiffs, Marion Byerly and her four daughters. The Byerlys cross–appeal from the court's denial of their motion for a directed verdict against the hospital on the issue of negligence. We affirm the order for a new trial, but reverse the denial of the Byerlys' motion for a directed verdict on the issue of negligence.

In September 1980, William Byerly, who was 50 years old, visited Dr. Arthur Madsen and advised him of physical complaints which Dr. Madsen diagnosed as symptomatic of gallbladder disease. Dr. Madsen scheduled surgery at the hospital on September 19, 1980, to remove Mr. Byerly's gallbladder. In order to perform surgery at Sacred Heart, Dr. Madsen was required to obtain a second surgeon to

consult and assist him. Dr. Madsen asked Dr. Max Allen to perform this role.

On the eve of surgery, Dr. Madsen took Mr. Byerly's physical history and ordered an EKG. Dr. Allen visited Mr. Byerly the morning of surgery, took his physical history, and noted that the results of an EKG were not on the chart. Neither Drs. Madsen and Allen nor the anesthesiologist reviewed the EKG prior to surgery. That EKG was abnormal.[1]

While under anesthesia for the removal of his gallbladder, Mr. Byerly experienced irregular pulse and blood pressure and died shortly thereafter of a massive heart attack. The Byerlys subsequently brought this action against Drs. Madsen and Allen, Physicians Anesthesia Group and the hospital. Their complaint alleged negligence by the doctors and the hospital with respect to, *inter alia,* the EKG. Prior to trial, the Byerlys settled with Physicians Anesthesia Group for $100,000.

At trial, the Byerlys presented the expert testimony of Dr. Ward Kennedy, Professor of Medicine at the University of Washington, with a specialty in cardiology, and of Dr. Eugene Strandness, Professor of Surgery at the University of Washington. Their opinions were that Drs. Madsen's and Allen's failure to review the EKG violated the standard of care and that the attending physicians could not rely on the anesthesiologist in this regard. Dr. Strandness further stated the standard of care would have required Dr. Madsen to refer Mr. Byerly to a cardiologist in light of the abnormal EKG. Both doctors also were of the opinion the hospital breached the standard of care when it failed to place the EKG on Mr. Byerly's chart. On cross examination by the hospital's counsel, Dr. Kennedy agreed that any violation by the hospital would have been cured had one of the

---

[1]The computer analysis of Mr. Byerly's EKG stated in part: "Arteriolateral ST segment depressions with diffused nonspecific T–wave abnormalities. If these changes are of recent origin, or if suggested by clinical evaluation, sub–endo cardial injury/ischemia must be considered."

physicians requested to see the EKG.

On his own behalf, Dr. Madsen said Mr. Byerly's physical history did not indicate heart disease. Although he admitted ordering the EKG, he stated he was not qualified to read the test. If the EKG suggested postponement of the surgery, then he expected to be notified of this fact by the "reader of the month," one of several cardiologists employed by the hospital on a monthly rotating basis to overread all the computer analyzed EKG's performed in the hospital. He also depended on the anesthesiologist to notify him if there was an abnormality. Dr. Allen agreed. Dr. Otto Penna, a Spokane surgeon testifying as an expert, said both Dr. Madsen and Dr. Allen had met the standard of care of a prudent surgeon.

The jury returned a special verdict finding Drs. Madsen and Allen and the hospital free of any negligence. In the Byerlys' motion for judgment n.o.v. or, in the alternative, a new trial, they cited jury misconduct. They attached the affidavit of Douglas E. Helm, the jury foreman, who attested that both before and during deliberations one of the jurors stated in the presence of the other jurors that the anesthesia group had been a defendant and had settled for $100,000. In response, the doctors and the hospital submitted the affidavits of eight of the jurors who stated that while they recalled some mention of the anesthesiologists, they did not recall any specifics and it was not considered by them during deliberations.

In a written decision, the Superior Court found that there had been jury misconduct which probably affected the verdict and, therefore, warranted a new trial. The court noted:

> The jury misconduct did not occur in a vacuum. One of the chief theories of defendants', especially Madsen's, case was that the negligence of someone other than the named parties defendant at the time of trial was the proximate cause of Mr. Byerly's death. Physician's Anesthesia Group was named as one of the parties who should bear responsibility. They were named repeatedly in the opening statements of defendants, the testimony of the

witnesses and again in closing arguments. Couple that accusation with the jury misconduct regarding the settlement with Physician's Anesthesia Group and one can discern a situation in which the misconduct could and probably did affect the jury's verdict.

## THE APPEAL

The doctors and the hospital contend the trial court abused its discretion when it ordered a new trial. We disagree.

■■ First, and most fundamental, a motion for a new trial is directed to the sound discretion of the trial court, and a stronger showing of abuse of discretion is needed to set aside an order granting a new trial than one denying a new trial. *Gardner v. Malone*, 60 Wn.2d 836, 846, 376 P.2d 651 (1962). As stated in *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971):

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

(Citations omitted.) *See also Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984). Stated differently, a trial court's discretionary decision will be affirmed unless no reasonable judge would have reached the same conclusion. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985).

■ It also is established that the trial court, in ruling on a motion for new trial based on jury misconduct, may consider jurors' affidavits insofar as they state "the facts showing misconduct, but not as showing the *effect* of such misconduct on the verdict". (Italics ours.) *Gardner*, at 842 (quoting *Maryland Cas. Co. v. Seattle Elec. Co.*, 75 Wash. 430, 134 P. 1097 (1913)). Under *Gardner*, "[i]t is for the court to say whether the remarks made by the juror . . .

probably had a prejudicial effect upon the minds of the other jurors." *Gardner,* at 840 (quoting *State v. Parker,* 25 Wash. 405, 415, 65 P. 776 (1901)). *See also Halverson v. Anderson,* 82 Wn.2d 746, 749, 513 P.2d 827 (1973); *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 179–80, 422 P.2d 515 (1967).

Here, the court properly considered Mr. Helm's affidavit as it related to the alleged statement made in the jurors' presence concerning the Byerlys' settlement with the anesthesiologist. *Gardner,* at 842. The court also properly reserved to itself the question of the effect of this statement; the jurors' affidavits that they did not consider the remarks inhered in the verdict. *Gardner,* at 841.

First, the doctors and hospital assert the fact of misconduct was not established by the jurors' affidavits. They argue that only Mr. Helm's affidavit reflects knowledge of the settlement and the other affidavits only say the jurors heard some mention of the anesthesiologist, but did not recall any details.

While the remaining affidavits are not as specific as Mr. Helm's statement, they do not dispute the material facts alleged there. The jurors' present lack of recall of what was said concerning the anesthesiologist does not contradict Mr. Helm's assertion that the settlement was mentioned.[2] The defendants' request for a hearing to take the jurors' testimony regarding their knowledge of the settlement would serve no purpose where the jurors lacked specific recall. We hold Mr. Helm's affidavit constitutes sufficient evidence from which the Superior Court could find the settlement had been mentioned in the jury's presence.

Second, the doctors and the hospital contend the court abused its discretion when it determined the misconduct probably had a prejudicial effect upon the minds of the

---

[2]*Leopold v. Livermore,* 115 Wash. 481, 197 P. 778 (1921) does not aid defendants. There, it was undisputed that the alleged misconduct took place in the presence of only one juror and it was clear from her vote on the verdict that she had not been influenced by the misconduct. Here, the misconduct occurred in the presence of all the jury.

other jurors. In their view, knowledge of the settlement logically could affect the jury only in its consideration of whether the negligence of the doctors and the hospital or that of the anesthesiologist was the proximate cause of Mr. Byerly's death. Since the special verdict found the doctors and the hospital without negligence, they reason that the jurors' knowledge had no effect on their verdict.

This argument does not withstand scrutiny. The fact of settlement has no more bearing on the issue of proximate cause than it does on the issue of negligence. Such settlements are inadmissible. *See Grigsby v. Seattle,* 12 Wn. App. 453, 458, 529 P.2d 1167 (it was error for the trial court to reveal during trial of plaintiff's action against City for injuries allegedly resulting from faulty design of a road that plaintiff had settled with driver of accident vehicle), *review denied,* 85 Wn.2d 1012 (1975); *Svea Fire & Life Ins. Co. v. Spokane, P. & S. Ry.,* 175 Wash. 622, 626, 28 P.2d 266 (1933) (compromises are favored in law and parties should not be penalized by having their efforts used against them). We believe an additional reason supporting the inadmissibility of settlements is a justifiable fear that a juror with such knowledge may conclude the plaintiff has already received sufficient satisfaction for his or her injuries and further compensation from a remaining defendant is unwarranted.[3]

Defendants also cite *Steinman v. Seattle,* 16 Wn. App. 853, 857, 560 P.2d 357 (1977), which suggests several factors, in addition to effect on the verdict, for the trial court to consider in granting a motion for a new trial. Here, the record does not reveal whether the Superior Court consid-

---

[3]Defendants rely on *Williams v. Andresen,* 63 Wn.2d 645, 388 P.2d 725 (1964), which holds that inadvertent disclosure to the jury through a newspaper article of the fact of insurance is not grounds for a new trial, absent misconduct of counsel. *Williams* is distinguishable from the situation here. In *Williams,* the trial court exercised its discretion to deny a new trial based on its conclusion that the jurors' verdict, which was not excessive, proved the jurors were not influenced by their knowledge of the existence of insurance. *Williams,* at 649. The Superior Court here had no comparable basis from which to conclude the jurors were not influenced by the mention of the settlement.

ered these additional factors. However, nothing in *Steinman* requires separate consideration of each of the factors. In fact, in *Steinman*, "the only untoward incident was the amount of the verdict which the trial court believed to be excessive. There was nothing more for the court to say." *Steinman*, at 857. Likewise, the court here had nothing more to say once it had determined the jurors were probably affected by the misconduct.

Finally, the doctors and the hospital assert that all the affidavits are hearsay and cannot be considered. In *Herndon v. Seattle*, 11 Wn.2d 88, 106, 118 P.2d 421 (1941), the court labeled as hearsay a juror's affidavit that he had heard two other jurors state that they had gone to the scene of the accident. Similarly, the affidavit of counsel is plainly hearsay and cannot be used to impeach the verdict of a jury. *Rowley v. Group Health Coop.*, 16 Wn. App. 373, 379, 556 P.2d 250 (1976). But here, we have Mr. Helm attesting to a fact of his own personal knowledge, *i.e.*, that the settlement was mentioned before the jury. His affidavit is not offered as proof that the Byerlys entered into a settlement with the anesthesiologist; only as proof that the jury was advised of such a settlement. Thus, his statements were not hearsay.

Given the wide discretion of the trial court in these matters and the necessity of a stronger showing to overturn the granting of a new trial, we find no abuse of discretion here. We uphold the order vacating the verdict and granting a new trial.[4]

---

[4]This case is distinguishable from *Tarabochia v. Johnson Line, Inc.*, 73 Wn.2d 751, 440 P.2d 187 (1968) and *Herndon*, where the court reversed trial court orders for new trials. In *Tarabochia*, the order was predicated on a question of law and no element of discretion was involved. In *Herndon*, the misconduct, a juror's view of an intersection in which an accident happened, did not relate to any matter in dispute at trial.

The Byerlys cite other incidents during trial which they argue support the order of new trial. They are (1) other jury misconduct; (2) the court's dismissal of their claim that Dr. Allen acted as the hospital's agent; (3) the court's refusal to allow them to inquire into the hospital's monitoring of the restriction on Dr. Madsen; and (4) the court's refusal to allow Dr. Strandness to testify that Dr.

## The Cross Appeal

The Byerlys maintain the court erred when it denied their motion for a directed verdict on the issue of the hospital's negligence. We agree.

■ Washington has recognized that a hospital owes an independent duty of care to its patients directly. *Pedroza v. Bryant,* 101 Wn.2d 226, 232, 677 P.2d 166 (1984) (citing *Pederson v. Dumouchel,* 72 Wn.2d 73, 431 P.2d 973, 31 A.L.R.3d 1100 (1967)). In an action for professional negligence against a hospital, the plaintiff must

> prove by a preponderance of the evidence that the defendant . . . failed to exercise that degree of skill, care, and learning possessed at that time by other persons in the same profession, and that as a proximate result of such failure the plaintiff suffered damages . . .

RCW 4.24.290. The question of whether a defendant breached the standard of care is separate from whether the breach was the proximate cause of the patient's damages; a dispute as to proximate cause may still go to the jury even if a directed verdict is called for as to negligence. *Keogan v. Holy Family Hosp.,* 95 Wn.2d 306, 327, 622 P.2d 1246 (1980).

■ In ruling on a motion for directed verdict, the trial court must view all of the evidence in a light most favorable to the nonmoving party. *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 533–34, 554 P.2d 1041 (1976). For purposes of the motion, the moving party admits the truth of the nonmoving party's evidence and all reasonable inferences arising therefrom. *Rasor; Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978).

Here, Drs. Madsen, Allen, Strandness and Kennedy all testified that the hospital had breached the standard of

---

Madsen had a duty to advise Mr. Byerly of the hospital's restriction on him. Since the order for the new trial is sustainable on the ground relied upon by the Superior Court, we will not analyze these other incidents. The Byerlys did not specifically present them to the court as alternative bases for their motion for a new trial. Nor have they assigned separate error to these incidents in their brief, allowing this court to review them.

care by not having the EKG results on Mr. Byerly's chart prior to his surgery. In resisting the Byerlys' motion for a directed verdict on the issue of negligence, counsel for the hospital relied on testimony by Drs. Madsen, Allen and Kennedy that at times patients' charts are not complete in many well run hospitals. Dr. Madsen indicated that the standard of care he had testified to earlier was an ideal standard. The Superior Court agreed this latter testimony created a jury question on the issue of the hospital's negligence.

■ The hospital argues it met the standard of care because even well run hospitals sometimes fail to place a test result on a patient's chart. This argument contradicts the doctors' testimony on direct examination that the hospital had not met the standard. The fact mistakes will occasionally happen whenever you have a large hospital running thousands of tests per year does not mean the hospital is not negligent. Were we to follow this reasoning, few persons who have been wronged would have a legal remedy for the consequences. Being a society of humans who are fallible, all of us make "mistakes"; and although a mistake is an unintentional act or omission, its consequences can range from the insignificant to the catastrophic. Therefore, to hold that the results of mistakes are not compensable would be far reaching.

Negligence is the failure to conform to a particular standard of care. To our knowledge, and we have been cited no authority to the contrary, mistake under these circumstances is not an exception to liability under a negligence theory. Thus, we hold the Superior Court should have granted the Byerlys' motion for a directed verdict on the issue of negligence.

The judgment of the Superior Court granting a new trial is affirmed; its denial of the Byerlys' motion for a directed verdict on the issue of the hospital's negligence is reversed.

CORBETT, J., concurs.

THOMPSON, J. (dissenting)—For the reasons which follow I would reverse granting a new trial based on jury misconduct and affirm denial of a directed verdict on the issue of the hospital's negligence.

As noted by the majority, a much stronger showing of abuse of discretion is required to set aside an order granting a new trial than one denying a new trial. *State v. Crowell*, 92 Wn.2d 143, 145–46, 594 P.2d 905 (1979). Moreover, evidence of settlements is inadmissible. *Grigsby v. Seattle*, 12 Wn. App. 453, 529 P.2d 1167, *review denied*, 85 Wn.2d 1012 (1975). But in this case, the jurors' affidavits did not reflect a clear recollection of the settlement statement by anyone but the juror making the remark and the foreman. Mere speculation the jury considered or was influenced by references to settlement does not justify a new trial. *Crane & Crane, Inc. v. C & D Elec., Inc.*, 37 Wn. App. 560, 570, 683 P.2d 1103 (1984); *Vern J. Oja & Assocs. v. Washington Park Towers, Inc.*, 15 Wn. App. 356, 361–63, 549 P.2d 63 (1976), *aff'd*, 89 Wn.2d 72, 569 P.2d 1141 (1977). The grant of the new trial amounted to discretion exercised on untenable grounds and therefore should be reversed.

Additionally, the majority finds the hospital negligent as a matter of law and requires that the trial court grant the Byerlys' motion for a directed verdict on that issue. On the contrary, the trial judge, noting the testimony presented, correctly found a reasonable factual dispute regarding the standard of care of hospitals. Although most of the testimony focused on the procedures carried out by the particular hospital in question, on cross examination the physicians testified charts in other hospitals would also occasionally lack results of tests ordered.

In considering a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the nonmoving party and grant the motion only if there is no evidence or reasonable inferences therefrom which would sustain a jury verdict in favor of the nonmoving party. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 684

506

P.2d 692 (1984). The motion must admit the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 586 P.2d 845 (1978). Admitting the truth of the evidence that charts in other hospitals are occasionally incomplete, the trial court was correct in ruling a jury question was created as to the standard of care of hospitals and whether that standard was in fact breached in this instance.

I therefore dissent.

Review denied by Supreme Court October 18, 1985.