**In the Matter of the ESTATE OF James A. McCUE, deceased.**

**Robert A. McCUE, Appellant (Respondent),**

v.

**George W. McCUE, James E. McCue, Thelma M. Dexter, and Marion L. Allen, Appellees (Objectors),**

**Stockmens Bank & Trust Company of Gillette, Wyoming, Executor of the Estate of James A. McCue, Deceased, Appellee (Petitioner).**

No. 88–107.

Supreme Court of Wyoming.

June 30, 1989.

in application to grazing lands of arid Wyoming.

Charles E. Graves and Jane A. Villemez of Graves, Santini & Villemez, P.C., Cheyenne, for appellant.

Bruce P. Badley of Badley & Rasmussen, P.C., Sheridan, for appellees George W. McCue, James E. McCue, Thelma M. Dexter, and Marion L. Allen.

Thomas E. Lubnau of Lubnau Law Office, Gillette, for appellee Stockmens Bank & Trust Co. of Gillette, Wyoming.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

This is an appeal from an order of the probate court accepting an appraisal of decedent's interest in the surface of ranch lands.

We affirm.

Appellant Robert A. McCue raises the following issues on appeal:

1. Whether the purchase price for land under an ambiguous testamentary option is governed by the court-approved stipulation between all interested parties, setting out the proper means for determining said purchase price.

2. Whether the probate court abused its discretion in approving and accepting an appraisal that was performed and prepared in violation of the court's order and instructions to appraisers.

On January 28, 1983, James A. McCue, appellant's father, executed his Last Will and Testament, which contained the following provision:

I hereby direct my Executor hereinafter named to sell all real property which I may own at the time of my death, provided however, my son Robert A. McCue shall have the first right to purchase said real property at its appraised value.

James A. McCue was thereafter declared incompetent, and appellee Stockmens Bank & Trust Company of Gillette, Wyoming, was appointed the guardian of his estate. On December 27, 1984, all the beneficiaries named in the Last Will and Testament of James A. McCue entered into a stipulation and order with the guardian and a court-appointed guardian *ad litem*, which provided appellant with a six-month option, effective upon the death of his father, to purchase the ranch

at a value determined by three appraisers, one selected by Robert McCue, one selected by the Executor of the James A. McCue Estate, and the third one selected by the two appraisers so chosen * * *.

James A. McCue died on October 15, 1985, possessed of a $^{15}/_{29}$ths interest in the surface of 4,191 acres of ranch lands. After the Last Will and Testament of James A. McCue was admitted to probate, the court, upon a motion of appellee Stockmens Bank & Trust Company of Gillette, Wyoming, as the personal representative of the estate of James A. McCue, deceased, appointed Joe W. King, Milton B. Williams, and Robert E. McKee to appraise the estate. On March 3, 1986, they appraised the decedent's interest in the ranch lands at the time of his death at a value of $140,904.31 ($65 per acre) on the basis of Mr. Williams' viewing of the property one year prior to the decedent's death.

On May 13, 1986, a second appraisal was made by Milton B. Williams, George Clabaugh, and William L. King, who appraised one hundred percent of the interest in the 4,191 acres on April 14, 1986, at a value of $147,500 ($35.19 per acre). Mr. Williams was selected by the personal representative of the estate, Mr. Clabaugh was selected by appellant, and Mr. King was selected by

joint agreement of appellant and the personal representative.

On April 15, 1986, appellant submitted a letter stating that he wished to exercise his option to buy his father's land for $35 per acre. The personal representative filed its return of sale on June 23, 1986, requesting that the court set appellant's purchase offer for hearing because of the disparity between the two appraisals. One day prior to the scheduled hearing, appellees George W. McCue, James E. McCue, Thelma M. Dexter, and Marion L. Allen offered to purchase their father's surface interest in the 4,191 acres for $94,839.44, an amount they alleged was twenty-five percent above appellant's offer of $75,871.55.[1]

Following the hearing, the court entered its order on August 14, 1986, denying confirmation of the sale upon making the findings that there was no good basis for either of the appraisals, that the sale to appellant should be refused, and that a new appraisal of the property should be conducted. The court then ordered that the appraisal be conducted in the following manner:

a. Robert A. McCue will submit the name of a competent real estate appraiser.

b. George W. McCue, James E. McCue, Thelma M. Dexter and Marion L. Allen will submit the name of a competent real estate appraiser.

c. The two appraisers selected will then submit the names of three real estate appraisers with whom they can agree, and along with the names they will submit a brief resume of their qualifications.

d. The court will select a name from the three appraisers submitted to it.

e. The three appraisers as above selected will make an appraisal of the real property and submit it to the court.

The court also ordered that appellant would have sixty days from the date of the filing of the appraisal in which to exercise his option.

For their choices of appraisers, appellant selected William King and appellees George W. McCue, James E. McCue, Thelma M. Dexter, and Marion L. Allen selected A.R. Ostlund. The court selected M.L. Watson from the list of three names provided by Mr. King and Mr. Ostlund. These individuals were appointed as the appraisers and were instructed to appraise the property at its fair market value on the basis of the highest and best use of the premises on the date of the appraisal.

On December 3, 1987, appraisers Ostlund and Watson filed their appraisal which valued the surface of the 4,191 acres at $172,-000 (approximately $41 per acre). On December 7, 1987, appraiser King filed his minority report in which he appraised the property at $148,800 ($35.50) per acre. The minority report states:

Mr. Ostlund made available to me the appraisal completed by him and Mr. Watson which I returned unsigned. I was not consulted regarding the sight inspection, comparable sales, analysis, or conclusion. Having already testified before your Court in this matter, and at the time feeling justified with our valuation of $147,500.00 to agree conclusively with Mr. Ostlund's and Mr. Watson's valuation, I would have been remiss in my duty at my previous appearance.

On December 31, 1987, appellant filed his resistance to the appraisal alleging that his designated appraiser, Mr. King, was not consulted prior to the preparation of the other appraisers' report and that the appraisal was made off the site and prior to the date for valuation specified in the court's instructions to the appraisers. On March 3, 1988, the court filed an order accepting the Watson and Ostlund appraisal. This appeal is taken from that order.

■ Appellant addresses his first issue by questioning the propriety of the court's appointment of the third appraiser in violation of the court-approved stipulation. Appellant devotes a considerable portion of his brief to contending that the option provision in his father's will is ambiguous in that it does not provide the manner for determining the appraised value of the

---

1. Thirty-five dollars per acre for ¹⁵/₂₉ths of 4,191    acres equals $75,871.55.

property and that the court should have complied with the stipulation. Appellant failed to raise these objections at the time the court announced the method it would utilize in appointing the appraisers and in his resistance to the appraisal which was filed and argued to the court, and these objections appear before this Court for the first time on appeal. We see no reason to deviate from our general rule that we will not address issues raised for the first time on appeal, and we continue to decline to do so in this instance. *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.*, 750 P.2d 1324 (Wyo.1988); *Grindle v. State ex rel. Wyoming Worker's Compensation Division*, 722 P.2d 166 (Wyo.1986).

■ Appellant contends in his second issue that the court abused its discretion by accepting the appraisal report of Mr. Ostlund and Mr. Watson, who failed to work with Mr. King as contemplated in the order, and that Mr. Ostlund and Mr. Watson failed to value the property as of October 5, 1987.

This court has defined abuse of discretion numerous times. Recently, we said:

" 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. * * *' *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

\*      \*      \*      \*      \*      \*

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985).

\*      \*      \*      \*      \*      \*

" * * * Each case must be determined on its peculiar facts. * * * "

*Martin v. State*, Wyo., 720 P.2d 894, 896–897 (1986).

*England v. Simmons*, 728 P.2d 1137, 1140 (Wyo.1986), *quoted in Rivermeadows, Inc. v. Zwaanshoek Holding and Financiering, B.V.*, 761 P.2d 662, 669 (Wyo.1988).

The record reflects that:

a. Each appraiser individually viewed the property;

b. Mr. Watson prepared a draft of an appraisal report for consideration by all the appraisers fixing the value of the property at $172,000 as of September 21, 1987, or approximately $41 per acre;

c. Mr. Ostlund was to consult with Mr. King before a formal appraisal was filed with the court but, before he could do so, Mr. King informed Mr. Ostlund that he had previously valued the property at approximately $35 per acre and that he was not going to change that amount;

d. Mr. King was furnished with a copy of the proposed appraisal to be submitted to the court for signature;

e. Mr. King returned the appraisal which was thereafter filed with the court as the Ostlund–Watson majority report; and

f. Mr. King filed his own appraisal fixing the value for the property at $148,800 as of October 5, 1987, or approximately $35.50 per acre.

We are unable to glean from the record why the court instructed the appraisers to value the property as of October 5, 1987, as opposed to the date of death or the date fixed in the second appraisal. In any event, appellant has failed to even suggest that Mr. Ostlund and Mr. Watson would have valued the property differently had they valued it as of October 5, 1987, rather than as of September 21, 1987. We see no reason for the probate court to have attached any significance to the few days' interim, particularly in view of Mr. King's insistence that the value of the property had not changed since the first time he appraised it as of April 14, 1986.

Appellant has not directed us to anything in the record which indicates that the probate court abused its discretion. We con-

clude that the court exercised sound judgment in the best interest of the estate and the beneficiaries by accepting the majority appraisal of Mr. Ostlund and Mr. Watson.

Affirmed.

CARDINE, C.J., filed a concurring opinion.

THOMAS, J., filed a dissenting opinion in which GOLDEN, J., joined.

CARDINE, Chief Justice, concurring.

I concur in the opinion of the court. I see this case as a studied effort by the trial judge to arrive at an appraisal that was fair, reasonable, and in accord with the testator's intention. The will itself does not specify that the "appraised value" for exercise of the option be that for probate or estate tax purposes or the first appraisal. I could not accept a conclusion that, with respect to the purchase option granted appellant, the court is powerless to do other than accept the first appraisal. Whether it be $1,000 per acre or $5,000 per acre. The trial court's resolution of this controversy was entirely appropriate.

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

I must dissent from the disposition of this case made by the majority opinion. It is my understanding that the effect of the majority holding, in this instance, is that the district court, sitting in probate, did not abuse its discretion in accepting an appraisal of real property in the estate that was not accomplished according to the statute. I cannot conceive of that approach being anything other than an abuse of the probate court's discretion. In publishing his Last Will and Testament, the only appraised value James A. McCue could have alluded to is the statutory appraisal. The adoption of an alternative appraisal arrived at in a different manner than that prescribed by statute is antithetical to our established rule that the intent of the testator controls.

The appellant essentially seeks to establish a value for the purpose of exercising an option to purchase real property con-tained in the Last Will and Testament of James A. McCue. That option is articulated as follows:

" * * * I hereby direct my Executor hereinafter named to sell all real property which I may own at the time of my death, provided however, my son Robert A. McCue shall have the first right to purchase said real property at its appraised value."

In accordance with well-established principles of law, the option speaks of the date of the testator's death.

The statute which governs estate appraisals provides, in pertinent part:

"(a) Within one hundred twenty (120) days after the timely filing by the personal representative of the inventory of assets of the estate of the decedent, pursuant to W.S. 2–7–403, the personal representative shall file under oath a report of appraisal of values of estate assets listed in the inventory. The report shall be in compliance with such of the following requirements as may be applicable:

"(i) As to all assets listed in the inventory which have a readily determinable market value, the value of each asset *as of date of death* shall be stated in writing by one (1) disinterested person;

"(ii) As to all assets listed in the inventory that do not have a readily determinable market value, the personal representative shall employ disinterested persons to determine the fair market value of each such asset, *as of the date of death.* A separate written report as to the value of each asset, showing the appraiser's basis for arriving at the value, shall be attached to the report." (emphasis added) Section 2–7–404, W.S.1977 (Cum.Supp.1988).

The statute is clear that the appraisal is to be made as of the date of death which, of course, matches the effective option date articulated in the will.

Consequently, I can find no room for the court to exercise its discretion and adopt a different appraisal, at least in relation to the option. Since, in the context of this appeal, that is the only concern of Robert A. McCue, the case should be reversed and

remanded with direction that Robert A. McCue's option is to be exercised, if at all, with respect to the first appraisal made which was as of the date of the testator's death. While the designation of those appraisers does not match the statute just quoted in all respects, I am satisfied that substantially those appraisers were nominated by the personal representative and, even though court approval was sought, that did not affect the validity of the appraisal that those appraisers furnished.

I am appalled by the suggestion that it is appropriate to adopt an appraisal accomplished by a different method even if agreed upon by the heirs and approved by the court. For me, that is no different from approving a distribution different from that provided by the testator if the heirs agree to it. That does not comport with the law recognizing the power of any person to dispose of his property as he sees fit.

Certainly, if the case were to go beyond the option and the real property were ordered sold at public sale or a private sale apart from the option, I would have no difficulty with the exercise of the discretion of the probate court in doing whatever might be necessary to assure that a fair value was obtained as of the date of the sale. That is not the problem in this case, however, and it should be reversed and remanded with directions to apply, for purposes of the option, the initial appraisal made by Joe W. King, Milton B. Williams, and Robert E. McKee, who appraised the decedent's interest in the ranch lands at the time of his death at a value of $140,904.31 ($65 per acre). In my judgment, that appraisal established the value at which Robert A. McCue should have the first right to purchase the real property.

This appeal is from an order approving an appraisal, which brings me to a further concern about the case. I am not able to identify any authority from this court which would recognize an order of the probate court accepting an appraisal as a final order pursuant to Rule 1.05, W.R.A.P. It is not such an order as determines the action and prevents a judgment. It is not such an order made in a special proceeding as truly affects a substantial right because the appraisal is not a special proceeding. My analysis causes me to conclude that the order accepting an appraisal is interlocutory in the truest sense, and some further request for relief was required by Robert A. McCue before a final order could be entered. I speculate that perhaps a complaint seeking a declaration of his rights under the will, or an offer to purchase based upon the appraisal followed by a rejection by the personal representative could result in a final order. Consequently, while I have addressed the resolution on the merits made in the majority opinion, my disposition would be to dismiss this appeal as one taken from an interlocutory order that is not a final order as defined in Rule 1.05, W.R.A.P.