Leonard E. ROTTMAN, Joan R. Rottman, David Rottman, Clarence Rottman, Susan Rottman–Bahr and D.C. Farms, a Wyoming Corporation, Appellants (Defendants),

v.

The CITIZENS NATIONAL BANK & TRUST COMPANY OF TORRINGTON, WYOMING, Appellee (Plaintiff).

No. 89–271.

Supreme Court of Wyoming.

Dec. 14, 1990.

---

Lisa C. Sweeney of Sweeney Law Office, Laramie, for appellants.

Donald E. Jones of Jones and Graham Law Offices, Torrington, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellants Leonard E. Rottman, Joan R. Rottman, David Rottman, Clarence Rott-man, Susan Rottman–Bahr, and D.C. Farms, a Wyoming corporation, (hereinafter the Rottmans) claim the district court abused its discretion when it adjusted the terms of the court-structured settlement reached between the Rottmans and Appellee Citizens National Bank & Trust Company of Torrington, Wyoming (hereinafter the bank).

We affirm.

This case began in November of 1987 when the bank sued various members of the Rottman family after they defaulted on several promissory notes totaling $744,-775.10. The bank also asked the district court to set aside numerous fraudulent transactions it alleged the Rottmans had made among themselves. After extended pretrial posturing, including a temporary restraining order, a writ of replevin, a contempt order, a withdrawal and substitution of counsel, a counterclaim, and a W.R.C.P. 11 motion for attorney's fees and sanctions, the case went to trial in July of 1989.[1]

Part way into the trial, the Rottmans asked the district court to halt the trial and assist them in structuring a settlement with the bank. After extensive negotiations, the parties entered into a stipulated settlement agreement which provided, *inter alia,* that the clerk of court would turn over to the bank the $143,043.81 recovered from the Rottmans through replevin.[2] Before the district court signed the stipulated settlement into judgment form, it was advised that the clerk held $12,305.78 less than the $143,043.81 the parties had stipulated to in reaching their settlement. After consulting with the parties, the district court included the following paragraph in its August 4, 1989, "Judgment by Stipulation and Order of the Court":

4. Upon review of the stipulation, the Court finds that the parties and the Court understood the sum of $143,043.81 to be held by the Clerk of Court as described in paragraph 3(b) above;[3]

---

1. The case has lost none of its acrimonious flavor; another W.R.C.P. 11 motion for attorney sanctions has been filed in this appeal.

2. The parties agreed that, in addition to the $143,043.81 recovered by the bank through re-plevin, the bank would receive $110,000, to be paid by the Rottmans in installments.

3. Paragraph 3(b) stated that the bank was to receive the following sum:

however, the Court finds that such amount is overstated by $12,305.78 and the sum held by the Clerk to be paid over to the [bank] was actually only $130,-078.03. The Court determines and orders that the difference of $12,305.78 be corrected by payment under paragraph 3 above by an additional installment in the amount of $12,305.78 to be paid on or before November 13, 1989, without interest. For good cause shown, the Court will entertain a motion for extension of time for payment of said $12,305.78.

The Rottmans appeal this portion of the judgment and argue that they agreed to pay $110,000 [4] to settle the case and that, therefore, it was an abuse of discretion for the district court to include the $12,305.78 difference in the judgment. The Rottmans do not dispute that the $110,000 payment was in addition to the stipulated $143,-043.81 held in replevin by the clerk.

We have outlined the components of the district court's discretion:

" 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. * * * ' *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980).

\* \* \* \* \* \*

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985).

\* \* \* \* \* \*

" \* \* \* Each case must be determined on its peculiar facts. \* \* \* " *Martin v. State,* Wyo., 720 P.2d 894, 896–897 (1986).

*England v. Simmons,* 728 P.2d 1137, 1140 (Wyo.1986).

We conclude that the Rottmans' argument is, at best, creative. They agreed that the bank would receive a sum certain in exchange for dismissing the lawsuit. This sum included the $143,043.81 held in replevin plus the $110,000 to be paid in installments. Before the terms of the settlement were reduced to judgment, the parties learned of the $12,305.78 difference between what the parties stipulated to and what the clerk held. After consulting with both sides, the district court drafted the judgment so that it accurately embodied the terms of the parties' settlement. Thus, the court ordered the Rottmans to pay the full amount stipulated to by the parties in settling their lawsuit. The district court simply gave effect to the terms of the parties' stipulated settlement. The district court acted appropriately under the circumstances, and, consequently, there was no abuse of discretion.

Affirmed.

URBIGKIT, C.J., files a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

As factually well illustrated in majority opinion, the creditor and debtor came to negotiate a settlement during an extended trial. Obviously, each party thought they had agreed, and clearly, the debtor paid what was intended. This majority, in following the trial court, now assesses an additional payment burden on the settling debtor because the creditor failed to know or find out what they had already collected. From this imposition of a payment penalty on the debtor, which is derived from an obvious mistake of the creditor and which is in clear contravention of a term of the stipulation for explicit payment, I dissent.

The antipathy of my dissent is further engendered from personal experience and past precedent where a creditor or its attorney makes a mistake and the besieged

---

$143,043.81 recovered by replevin in this action and paid to the Clerk of Court, which sum shall be paid over to the [bank], together

with any accumulated interest on said deposit.

4. *See supra* note 2.

debtor is ordered to become the guardian angel for further payment. *Eddy v. First Wyoming Bank, N.A.–Lander,* 750 P.2d 294 (Wyo.1988); *Eddy v. First Wyoming Bank, N.A.–Lander,* 713 P.2d 228 (Wyo. 1986).

In this case, without a shadow of a doubt, the debtor offered to divvy up $110,-000, which was to be gathered together to achieve a loan balance settlement. The fact that the creditor, as it came to be recognized by the trial court at a later date, had $12,305.78 less collected than expected, was the creditor's mistake and not that of the debtor in offering $110,000 as complete and final settlement.

I take no comfort in analyzing this case for affirmation that the debtor did not reject the creditor's figures in computation directed to approve the $110,000 cash payment settlement. This decision directly places responsibility in assessing obligation to the debtor for a mistake of the creditor which, unfortunately, could have been corrected in the courthouse by a walk down the hallway to the clerk's office or, in the bank or the law firm's office, by a telephone call.

Sequentially, creditor, by replevin and execution, gathered together a fund from the debtor which was on deposit with the clerk of court. For whatever combination of circumstances, either creditor or counsel neglected to compute or recall that a portion of the replevin funds had been repaid to an uninvolved third party in the amount of $12,305.78 so that the amount held by the clerk of court, easily determinable by casual inquiry, was only $130,078.03 instead of the initial $143,043.81.

This court reassesses that factual record to establish that the debtor agreed to pay $253,043.81 instead of the $110,000 and whatever the creditor had already collected. I agree with the majority that the debtor agreed to sweeten the pot by $110,-000 explicitly and expressly, but not $110,-000 in addition to a non-existent sum attested to by the creditor, of which part had been lost from its proceeds in replevin actions. No one can realistically question that the bank made the calculation mistake.

Otherwise, if they wanted more money, they would have set the payment horizon of an additional $12,000, give or take.

Rational knowledge of business negotiations and the specific evidence in this record gain credence from the testimony found in the record itself where the procedure for payment of the cash consideration of $110,000 was considered in detail for security status and installment payment scheduling. It is a curiosity of these events that this majority completely ignores the specificity of what happened:

MR. ARON [one of the defendants' attorneys]: What I'm trying to avoid is anything unexpected. Throughout the case people have filed things. I'm just saying take no action without Court approval as to the secured assets, except the bank shall have the right to inspect.

MR. JONES [plaintiff's attorney]: Through the Sheriff.

MR. ARON: Through the Sheriff of Goshen County.

One other paragraph. Upon full payment of the $110,000 together with the interest thereon, that there shall remain no claims by plaintiff Citizen's National Bank or the Farmers Home Administration based upon the notes identified in this action as numbers 1260, 1270, 1280, and 2230 and all disputes between the parties arising from this action will have been settled and resolved.

MR. JOHNSON [another attorney of composite defendants]: Upon final payment, the FHA note is returned to the defendants and that the bank will release all secured agreements and financing statements filed anywhere with regards to the fourth promissory note which are the subject matter of the litigation.

MR. JONES: I have one other thing with regard to Farmers Home Administration. This stipulation is subject to approval of the Farmers Home Administration, which plaintiff's counsel gives his assurance that it is his belief that it is within the realm of his authority to make this stipulation subject to the further condition that the defendants represent to the Court and to the plaintiff and

Farmers Home Administration that they have disclosed all assets which have been derived and are possessed by them in the operation of the Rottman farm and ranch during the period of this litigation.

MR. JOHNSON: My question is are we settling the damn thing or aren't we? We are paying the 110,000 bucks and it's over with.

THE COURT: We are settling it. I can understand Don's concern but what we are doing here is settling a lawsuit. I think through the discovery and everything else, if we haven't found it all, I don't know what to say.

Unfortunately even after this occurred, upon finding that it had a short pot in dollars deposited at the clerk's office, creditor bank requested the debtor make up for its own miscomputation, which by then had been stated in the stipulation for settlement. It was the bank's mistake and the debtor should not be assessed a further burden for what was determinable by the bank in advance with only a simple telephone call or any personal inquiry. This record reflects, and I would agree, that the offer was a specific dollar settlement which was accepted and left no right remaining for the creditor to later recompute by reshuffling the cards after both hands had been turned face up. Even though the creditor may have hoped, or even expected, to receive $253,043.81, the debtor stipulated to and clearly agreed only to settle for $110,000, which amount was then accepted. I dissent from this curative judicial action to correct a creditor's mistake at the unjustified expense of the settling debtor. The decision is especially egregious since the creditor is permitted to renege from settlement for $110,000 and the debtor is not only bound to his payment agreement, but later dragnetted for $12,305.78 more.