IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87677-5-I |
| Respondent, | DIVISION ONE |
| v. | |
| CODY ALLEN SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — Following the fatal shooting of Soohui Kim, the State charged Cody Smith with felony murder in the first degree, assault in the first degree, and unlawful possession of a firearm. The felony murder charge was predicated on robbery or attempted robbery. The jury convicted Smith on all counts.

Smith appealed, claiming (1) insufficient evidence existed to support his first degree felony murder conviction, (2) the jury instructions relieved the State of its burden of proof, (3) his right to jury unanimity was violated, (4) the prosecutor engaged in prosecutorial misconduct, (5) the trial court erred by giving the jury headphones, and (6) his conviction for unlawful possession of a firearm violated his Second Amendment rights. Finding no error, we affirm.

FACTS

Background

Early in the morning on September 22, 2021, "Mike Stereo," later identified as Michael Deda, texted Soohui Kim to arrange for the purchase of

approximately $1,200 worth of methamphetamine. Deda and Kim agreed to meet at an apartment building in Tacoma for the exchange. Video surveillance footage from an apartment across the street shows Kim driving slowly past the parking lot where she and Deda were scheduled to meet. The video then captures two men, later identified as Michael Freeman and Cody Smith, walking past the parking lot. About this same time, Deda called Smith and said, "She went right by me. . . . She should be on her way." Shortly after Freeman and Smith walked by, Kim pulled into the parking lot and texted Deda to let him know she had arrived.

A couple minutes later, Freeman and Smith walked back toward the parking lot. They paused for a few seconds behind a bush and then approached Kim's vehicle. Smith went to the passenger side door, where Kim's friend, Eric Pula, was sitting, and Freeman went to the driver's side. In a subsequent interview with law enforcement, Pula told police Smith looked at him and said, "I know your face." Within seconds of Freeman and Smith approaching the vehicle, they fired five shots from two different guns. One of the bullets struck Kim in the chest and another grazed Pula.

As Freeman and Smith continued to shoot, Kim sped out of the parking lot. A few blocks away, her car rolled to a stop against a telephone pole. Before the car came to a complete stop, Pula jumped out and ran to a nearby gas station to call 911. Law enforcement arrived on the scene and found Kim still in the car, unresponsive. She was pronounced dead shortly thereafter.

Law enforcement connected the telephone number Kim had texted about the drug deal with Michael Deda. Police arrested Deda and, after listening to Deda's jail calls, identified Michael Freeman as another potential suspect. Freeman's girlfriend lived a few blocks away from the location of the shooting, and Smith resided in her detached garage. Surveillance video from Freeman's girlfriend's house, recorded about 10 minutes after the shooting, depicts Freeman, Deda, and Smith meeting at the residence. Who is speaking to whom is not clear, but one individual asks, "Did anybody see the car?" and another individual responds, "No."

Police arrested Smith and charged him with felony murder in the first degree, felony murder in the second degree, first degree assault, unlawful possession of a firearm in the second degree, attempted robbery in the first degree, and conspiracy to commit robbery in the first degree.[1]

During trial, the Ring doorbell[2] video of Freeman, Deda, and Smith discussing whether anyone saw the car was admitted as an exhibit and published. Smith did not object. During closing arguments, the State replayed the video and suggested it was Deda who asked the question and Smith who responded, but the prosecutor noted he was "not positive" and "[i]t could be the other guy." The prosecutor encouraged the jurors to watch the video again in the jury room, noting the sound quality in the courtroom distorted the speech.

---

[1] All charges except unlawful possession of a firearm contained a firearm sentencing enhancement.

[2] A Ring doorbell is a security device that combines a doorbell with a security camera for live video streaming.

During deliberations, the jury requested headphones to listen to the exhibit. Smith objected, contending headphones would alter the manner of viewing and any replaying of the exhibit should occur in open court. After hearing from both parties, the court permitted the jury's request for headphones. The jury also submitted a question to the court asking, "State said something to the effect of: 'When Kim arrived at 4541, Mike Deda told someone 'she's near,' and that was Cody's phone.' Is there any evidence supporting this statement?" To which the court replied, "You have received all the evidence in this case. Please refer to your instructions." The jury convicted Smith on all charges. Smith appeals.

ANALYSIS

Sufficiency of the Evidence

Smith claims insufficient evidence of attempted robbery existed to convict him of murder in the first degree. We find sufficient evidence existed to support Smith's conviction.

We review sufficiency of the evidence under the substantial evidence standard. *Dolan v. King County*, 172 Wn.2d 299, 310-11, 258 P.3d 20 (2011). To determine whether substantial evidence was presented, we must view the evidence in the "light most favorable to the State" and determine whether "any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Evidence presented by the State is considered true and we defer to the trier of fact on issues of witness credibility, conflicting testimony, and persuasiveness of the evidence. *In re Pers.*

*Restraint of Arnsten*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024).  Circumstantial evidence is considered as reliable as direct evidence.  *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

To convict Smith of attempted robbery in the first degree, the jury had to find Smith intended to commit robbery, engaged in an act which was a substantial step toward the commission of that crime, and in the course of said crime, caused Kim's death.  Here, Smith's argument is the evidence presented was insufficient to prove attempted robbery because the evidence was consistent with an intention other than robbery, such as revenge or rivalry.  Smith claims without additional evidence, it is just as likely another intent existed.

But whether another intent was possible is not the inquiry for this court. We look at the evidence presented and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Cardenas-Flores*, 189 Wn.2d at 265.  Here, viewed in the light most favorable to the State, substantial evidence exists to support a finding of attempted robbery.

The trial court heard testimony and viewed exhibits outlining the sequence of events from the night of the shooting.  Deda reached out to Kim to purchase a quantity of methamphetamine worth approximately $1,200.  Smith knew Kim would have the drugs in her vehicle when she arrived at the designated location. Video footage shows Smith and Freeman walking by the parking lot before the incident, then Deda called Smith and said, "She went right by me. . . . She should be on her way."  Then, when Smith approached the vehicle, he said to Pula, "I know your face."  Seconds after, Smith started shooting.  At trial, Smith did not

5

present any evidence that he or any of the other defendants had a previous relationship with Kim or that any animosity existed between the parties.

Based on this evidence, a rational trier of fact could find Smith guilty of attempted robbery in the first degree beyond a reasonable doubt; therefore, we conclude substantial evidence existed to support Smith's conviction.

<u>Jury Instructions</u>

Smith contends his right to jury unanimity was violated when the jury was instructed on alternative means of committing murder in the first degree, and insufficient evidence supports one of the alternative means. The State asserts Smith cannot raise this issue for the first time on appeal and, even if he can, his right to jury unanimity was not violated. We conclude that the issue can be raised on appeal, but nevertheless, Smith's right to unanimity was not violated.

Typically, we do not consider issues not objected to at trial, but manifest errors affecting a constitutional right may be raised for the first time on appeal. RAP 2.5(a). The question of jury unanimity concerns issues of constitutional due process rights under challenged jury instructions. *In re Pers. Restraint of Mulamba,* 199 Wn.2d 488, 507, 508 P.3d 645 (2022). Because this issue implicates Smith's constitutional rights, Smith may raise it for the first time on appeal. We view questions of jury unanimity de novo. *State v. Armstrong*, 188 Wn.2d 333, 339, 394 P.3d 373 (2017).

A defendant has a constitutional right to a unanimous jury verdict. CONST. Art. I, § 21. When a defendant is charged with a crime that may be committed by alternative means, jury unanimity as to the means is not required if "substantial

6

evidence supports both alternative means submitted to the jury." *Armstrong*, 188 Wn.2d at 340. If sufficient evidence is not presented for the alternative means, the defendant's right to jury unanimity is violated. *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007).

Determining whether a statute creates an alternative means crime is left to judicial interpretation, and each case must be decided "on its own merits." *State v. Owens*, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014). Alternative means are not created simply by structuring a statute into subsections or using the disjunctive word, "or." *State v. Sandholm,* 184 Wn.2d 726, 734, 364 P.3d 87 (2015). To be alternative means, the acts must be distinct, not merely "minor nuances inhering in the same act." *Sandholm*, 184 Wn.2d at 734.

The alternative means analysis does not apply "[w]hen a statute provides alternative ways to satisfy each alternative means (i.e., 'a means within [a] means')." *State v. Lucas-Vicente*, 22 Wn. App. 2d 212, 221, 510 P.3d 1006 (2022) (second alteration in original) (internal quotation marks omitted) (quoting *Smith*, 159 Wn.2d at 783)); *see also State v. Espinoza*, 14 Wn. App. 2d. 810, 818, 474 P.3d 570 (2020) (determining that, even though harassment is an alternative means crime, the subalternatives within each means were not alternative means); *State v. Hartz*, 65 Wn. App. 351, 355, 828 P.2d 618 (1992) ("[W]e hold that in charging [defendant] with felony murder, the State was not required to include the elements of the underlying felony or state the specific means of committing the felony on which it was relying."). The alternative means analysis also does not apply to lesser included offenses or attempt. *See State v.*

*Boswell*, 185 Wn. App. 321, 335, 340 P.3d 971 (2014); RCW 10.61.003 ("Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.").

RCW 9A.32.030 provides three ways in which a person may commit murder in the first degree: (1) premeditated intent, (2) extreme indifference to human life, and (3) felony murder. Felony murder occurs when a person "commits or attempts to commit the crime of . . . robbery in the first or second degree . . . and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants." RCW 9A.32.030.

Here, Smith asserts his right to jury unanimity was violated because the jury was instructed on felony murder predicated on the alternative means of robbery and attempted robbery, and insufficient evidence existed to support a finding of actual robbery. But robbery and attempted robbery are not alternative means of committing felony murder in the first degree. *See* RCW 10.61.003. While first degree murder is an alternative means crime, robbery and attempted robbery are subalternatives within a means. Felony murder is the means and robbery and attempted robbery are alternative ways to satisfy that means; therefore, robbery and attempted robbery are not alternative means, the State was not required to produce sufficient evidence for both.

Smith relies on *In the Pers. Restraint of Knight*, 2 Wn.3d 345, 538 P.3d 263 (2023), to argue robbery and attempted robbery are alternative means, but that interpretation misinterprets the holding in *Knight*. In *Knight*, Amanda Knight was charged with felony murder. 2 Wn.3d at 348. At trial, the State instructed the jury on felony murder based on robbery, but not felony murder based on attempted robbery. *Id.* at 349. The evidence only supported a finding of attempted robbery, but the jury convicted Knight of felony murder based on robbery. *Id.* at 349. The Supreme Court noted, "Felony murder need not be based on a completed crime. But if it is predicated on an attempted crime, the jury instructions must so state." *Id.* at 354 (citation omitted). The court held insufficient evidence supported Knight's conviction and remanded the case to vacate her sentence. *Id.* at 362.

*Knight* is not applicable here, because *Knight* is not an alternative means case. The case held that to be convicted of felony murder based on attempted robbery, attempted robbery must be included in the jury instructions; alternative means was not at issue. Here, Smith was convicted of attempted robbery, not robbery, and the State included the elements of attempted robbery in the jury instructions.

This is also not a multiple acts case, as the State contends is Smith's argument. In a multiple acts case, several, distinct acts could form the basis for the count charged. *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009). When this occurs, the court must either instruct the jury on which act to rely or the jury must agree on a specific act. *State v. Kitchen*, 110 Wn.2d 403,

9

409, 756 P.2d 105 (1988).  Here, as the State correctly points out and Smith does not dispute, the felony murder charge was predicated on only one act.  The State incorrectly interprets Smith's argument, which is an alternative means argument, not a multiple acts argument.

The State presented sufficient evidence for felony murder based on attempted robbery and included attempted robbery in the jury instructions. Smith's right to jury unanimity was not violated.

<u>Prosecutorial Misconduct</u>

Smith contends the State engaged in prosecutorial misconduct when it expressed an improper opinion based on facts not in evidence.  The State claims their argument was based on reasonable inferences from the evidence.  We agree with the State.

To prevail on a claim of prosecutorial misconduct, a defendant must establish, "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In the Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).  Prejudice is established "only where 'there is a substantial likelihood the instances of misconduct affected the jury's verdict.' " *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003) (quoting *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 546 (1995)).  Prosecuting attorneys are permitted wide latitude in their closing arguments to draw "reasonable inferences from the evidence." *Lucas-Vicente*, 22 Wn. App. 2d at 224.  But a prosecutor cannot state an opinion that goes to the ultimate question of the defendant's guilt.  *Glasmann*, 175 Wn.2d at 706.  When

10

a defendant fails to object to improper conduct during trial, it constitutes a waiver unless the defendant can establish the "misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice." *Glasmann,* 175 Wn.2d at 704.

1. Exhibit 124

Smith contends the State's arguments concerning exhibit 124 were based on facts not in the record.[3]  In his opening brief, Smith denies the dialogue in exhibit 124 is discernable and maintains the State's reference to what Deda and Smith said in the video is, therefore, not based on evidence in the record.  But in his reply brief, Smith concedes the exhibit was properly admitted and notes, "It was up to the jury, not appellate counsel, to decide what, if anything is said." However, Smith maintains the State expressed an improper opinion when it suggested to the jury that the voice on the recording was Smith's because his voice was never heard at trial.  This argument fails.

The State is allowed to argue reasonable inferences from the evidence and express opinions, as long it is not an opinion of the defendant's guilt.  The State's discussion of the video did not opine as to Smith's guilt, it only suggested the voice on the video was Smith's.  The State even clarified it was not positive the voice was Smith's—leaving the jury to come to their own conclusion. Accordingly, the State's discussion concerning exhibit 124 was not improper.

---

[3]  Exhibit 124 is video footage of Freeman, Deda, and Smith, recorded about 10 minutes after the shooting.  Who is speaking to whom is unclear, but one individual asks, "Did anybody see the car?" and another individual responds, "No."

2. Jury Question

Smith also claims that, based on its question to the court, the jury was mistaken about the prosecutor's argument. But Smith provides no explanation for how this was prosecutorial misconduct. The jury submitted a question during deliberations asking, "State said something to the effect of: 'When Kim arrived at 4541, Mike Deda told someone "she's near," and that was Cody's phone.' Is there any evidence supporting this statement?" Smith contends the State never argued Deda said "she's near." While Smith is technically correct the State did not use the word "near," the State did present evidence of a phone call from Deda to Smith where Deda said, "She went right by me. . . . She should be on her way."

Smith appears to conflate the jury's question about this phone conversation with the conversation in exhibit 124. In his brief, Smith claims the jury's question "was apparently a reference to the prosecutor's argument about the conversation on Exhibit 124, and the trial court interpreted as such." Smith cites to the report of proceedings, but the discussion refers to concerns about the jury's request for headphones, not the jury's question about the phone call between Deda and Smith.

Whether related to the phone call between Deda and Smith or exhibit 124, the jury's question is not evidence of prosecutorial misconduct. The State did not argue evidence not in the record, and whether the jury misunderstood the State's argument does not amount to prosecutorial misconduct. It is the jury's job to weigh the evidence and follow the instructions from the court. One could infer

from the jury's question that they were doing precisely that—determining whether evidence existed to support the State's argument.

Because the State's argument was properly based on evidence in the record, we conclude no prosecutorial misconduct occurred.

### Jury's Use of Headphones

Smith claims the trial court erred when it provided the jury headphones during deliberations to listen to a video exhibit, because the jurors used the headphones to ascertain facts not in evidence. Because the headphones were only used to critically examine the evidence, the trial court did not err.

A trial court's decision concerning evidentiary issues is reviewed for abuse of discretion. *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). "A trial court abuses its discretion when it exercises it in a manifestly unreasonable manner or bases it on untenable grounds or reasons." *State v. Morgensen*, 148 Wn. App. 81, 86–87, 197 P.3d 715 (2008).

It is improper for a court to provide jurors with tools that may be used to conduct experiments and ascertain evidence not admitted at trial. *See State v. Burke*, 124 Wash. 632, 636, 215 P. 31 (1923) (holding it was error to allow the jury to use a magnifying glass to conduct an experiment and glean additional evidence from exhibits); *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 137, 750 P.2d 1257 (1988) (concluding it was error for the bailiff to give jurors a dictionary, allowing them to consider evidence not admitted at trial). But if the tool is used merely "to assist the jury in understanding or evaluating the evidence presented at trial," no error occurred. *State v. McCarthy*, 178 Wn. App. 90, 100,

312 P.3d 1027 (2013); *see also State v. Everson*, 166 Wash. 534, 536-37, 7 P.2d 603 (1932) ("In using a magnifying glass rather than a reading glass, the only difference would be the greater magnifying power of the former."); *Tarabochia v. Johnson Line, Inc.*, 73 Wn. 2d 751, 757, 440 P.2d 187 (1968) (concluding any experiments conducted by the jury did not result in new evidence and, therefore, the experiments were not improper).

Here, Smith insists providing the jury with headphones allowed them to conduct an experiment and determine facts not in evidence. This argument is based on Smith's contention that the dialogue in exhibit 124 could not be discerned and it was evidence not in the record. But in his reply brief, Smith concedes the videotape was evidence in the record and it was up to the jury to determine whether the dialogue was discernable and, if so, what was said. Smith's argument concerning the headphones is based entirely on an issue he conceded.

We conclude the court did not abuse its discretion when it allowed jurors to use headphones to listen to an admitted exhibit.

## Second Amendment

Smith contends his conviction for unlawful possession of a firearm must be dismissed because a statute restricting firearm possession for all felons is unconstitutional. The State asserts Smith cannot raise this issue for the first time on appeal because it is not manifest error, and even if he could, his Second Amendment rights were not violated. Because prohibiting all felons—including

nonviolent felons—from possessing firearms is not unconstitutional, we conclude Smith's Second Amendment rights were not violated.

1. RAP 2.5

This court may refuse to review a claim or error not raised in the trial court. RAP 2.5(a). An exception to this rule is when the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a). "Being charged and convicted under an unconstitutional statute is a manifest error effecting [sic] a constitutional right." *State v. Koch*, 34 Wn. App. 2d 232, 236, 567 P.3d 653 (2025).

Here, the State contends Smith did not demonstrate an exception under RAP 2.5(a), therefore he cannot raise a challenge to the constitutionality of RCW 9.41.040 on appeal. But Smith explicitly claims the applicable statute is unconstitutional, thereby violating his Second Amendment rights. Because Smith raises a manifest error affecting a constitutional right, we conclude he did not waive his claim.

2. RCW 9.41.040

We review constitutional challenges de novo. *City of Seattle v. Evans*, 184 Wn.2d 856, 861, 366 P.3d 906 (2015). Statutes are presumed constitutional, and the burden is on the challenger to show unconstitutionality. *Evans*, 184 Wn.2d at 861-62. A party raises an "as-applied" challenge when they claim the statute is unconstitutional only as it applies " 'in the specific context of [their] actions or intended action.' " *Evans*, 184 Wn.2d at 862 (quoting *State v. Hunley*, 175 Wn.2d 901, 916, 287 P.3d 584 (2012)). If a statute is unconstitutional as applied, it "does not invalidate the statute but prohibits its

15

application in that specific context and future similar contexts." *State v. Ross*, 28 Wn. App. 2d 644, 646, 537 P.3d 1114 (2023), *review denied*, 2 Wn.3d 1026 (2024).

The Second Amendment vests in individuals the right to bear arms. *See* U.S. CONST. amend. II. But this right is not unlimited. *Dist. of Columbia v. Heller*, 554 U.S. 570, 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). When faced with a challenge to a firearm regulation, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024). The Supreme Court has recognized several longstanding prohibitions concerning the possession of firearms, including possession by non-law abiding citizens. *See, Heller*, 554 U.S. at 626-27 ("[N]othing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill.")

In subsequent Supreme Court cases involving Second Amendment analysis, the Court reiterated its conclusions in *Heller*, including the constitutionality of prohibiting felons from possessing firearms. *See McDonald v. City of Chicago*, 561 U.S. 742, 786, 130 S. Ct. 3020, 177 L. Ed. 2d 894, (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons' . . . . We repeat those assurances here." (quoting *Heller*, 554 U.S. at 626-27)); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 71-72, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) (Alito, J., concurring) (affirming the holdings

of *Heller* and *McDonald* concerning restrictions on the possession of firearms);
*Rahimi*, 602 U.S. at 682 (same).

Even before *Heller*, Washington courts upheld regulations prohibiting
felons from possessing firearms. *See State v. Krzeszowski*, 106 Wn. App. 638,
641, 24 P.3d 485 (2001) (holding RCW 9.41.010, which prohibits felons from
possessing firearms, constitutional). Since the Supreme Court's decision in
*Bruen*, this court has solidified its holding in *Krzeszowski*. In *Ross*, we affirmed
our decision in *Krzeszowski* and further declared no distinction exists between
violent felons and nonviolent felons for purposes of chapter 9.41 RCW. 28 Wn.
App. 2d at 652.

Here, Smith does not contend RCW 9.41.040 is unconstitutional as
written, he only claims the statute is unconstitutional as applied to his
circumstances. He maintains a prohibition that disarms all felons, regardless of
whether the individual presents a credible threat to others, is not rooted in
common law. He insists *Krzeszowski* overstated the applicable law and the
prohibition on possession of firearms should only apply to individuals whose
underlying felonies pose a clear threat of physical violence to another, not
nonviolent crimes. But Smith fails to acknowledge this court's decision in *Ross*,
and more recently, *State v. Hamilton*, 33 Wn. App. 2d 859, 565 P.3d 595,
granting review, 572 P.3d 1206 (2025).[4]

---

[4] *Hamilton* affirms the ruling in *Ross* that a statute prohibiting non-violent
felons from possessing firearms is not unconstitutional, but engages in the
textual-historical analysis announced in *Bruen*. *Hamilton*, 33 Wn. App. 2d at 870-
75.

In *Ross*, Ross was convicted of unlawful possession of a firearm in the first degree based on his possession of a firearm and previous conviction of burglary in the second degree. 28 Wn. App. at 645. On appeal, Ross contended RCW 9.41.040 was unconstitutional as applied to him because "the government cannot justify restricting the possession of firearms for those with nonviolent felony convictions." *Id.* at 646. This court disagreed and noted that neither *Bruen* nor *Heller* "distinguished violent felons[] from nonviolent felons." *Id.* at 652. Both Supreme Court cases make clear "the Second Amendment protects the individual right of 'law-abiding, responsible citizens' to possess firearms. *Id.* at 651 (internal quotation marks omitted) (quoting *Bruen*, 597 U.S. at 26). Like Ross, Smith was previously convicted of a felony[5] and is not a law-abiding citizen. Therefore, it is not unconstitutional for RCW 9.41.040 to prohibit felons, including felons convicted of nonviolent crimes, from possessing firearms. Because RCW 9.41.040 is not unconstitutional as applied to Smith, we conclude his conviction does not violate the Second Amendment.

<u>Statement of Additional Grounds</u>

In a statement of additional grounds, Smith asserts insufficient evidence existed to support a finding of robbery in the first degree and the "to convict" instructions relieved the State of its burden to prove the elements of robbery in

---

[5] Smith was previously convicted of two counts of forgery, three counts of identity theft in the second degree, one count of possession of stolen property in the second degree, and one county of unlawful possession of a firearm in the second degree. These are all felonies in the state of Washington. *See* RCW 9A.60.020 (forgery), RCW 9.35.020 (identity theft), RCW 9A.56.160 (possession of stolen property); and RCW 9.41.040 (unlawful possession of a firearm).

the first degree. We agree, as did the jury, that insufficient evidence existed to support a finding of robbery, but the State was not required to prove robbery; therefore, Smith's argument fails.

A defendant may submit a pro se statement of additional grounds under RAP 10.10. We only consider issues raised in that statement of additional grounds if they adequately inform us of the "nature and occurrence of the alleged errors." *State v. Calvin*, 176 Wn. App.1, 26, 316 P.3d 496 (2013); RAP 10.10. We do not consider arguments repeated from the briefing. RAP 10.10(a).

The purpose of the information is to give the defendant notice of the crimes with which they are charged. *State v. Borrero*, 147 Wn.2d 353, 359, 58 P.3d 245 (2002). On the other hand, "to convict" instructions inform the jury with the law to be applied in the case. *State v. Allen*, 161 Wn. App. 727, 737, 255 P.3d 784 (2011). A defendant can be charged with attempt to commit a crime even if the information only contains the completed crime. *See* RCW 10.61.003. When charging a defendant with attempt, the "to convict" instructions must either:

> (1) stat[e] the two essential elements of attempt and provid[e] a separate definition of the crime the actor intended to commit, or (2) provid[e] the statutory definition of attempt and provid[e] a separate elements instruction delineating the elements of the crime the defendant intended to commit and using the word "attempt" along with those elements.

*State v. Nelson*, 191 Wn.2d 61, 72, 419 P.3d 410 (2018).

Smith's argument is difficult to parse, but based on this court's reading, Smith is alleging the State needed to present sufficient evidence of the completed crime of robbery to maintain his conviction for murder in the first

19

degree based on attempted robbery. Smith points to count 6 in the "to convict" instructions, where the elements of attempted robbery in the first degree as well as robbery in the first degree are listed and compares to jury instruction 17, where only the elements of attempted robbery are included.

But the State was not required to prove the elements of robbery because Smith's conviction was predicated on attempted robbery. The State was also not required to include attempted robbery in the information to charge Smith with such. The State included the statutory definition of attempt as well as the elements of robbery in the instructions, properly informing the jury of the law to apply. Because the jury instructions conveyed the elements of attempted robbery in the first degree and sufficient evidence existed to support a conviction based on attempted robbery (see discussion *supra*), we conclude the State met their burden of production.

We affirm.

WE CONCUR:

20